Jean M. HANNEBAUM and James Hannebaum, Plaintiffs-Respondents,†

v.

DIRENZO & BOMIER, a partnership, Direnzo, Simonis & Miller, a partnership, Aetna Casualty & Surety Company, a foreign corporation, and Lakeshore, Ltd., a Wisconsin corporation, Defendants-Appellants,

ABC INSURANCE COMPANY, Blue Cross Blue Shield United of Wisconsin, Cigna Insurance, Kimberly Clark Corp., and American National Can Co., Defendants,

AETNA LIFE INSURANCE COMPANY, Employee Benefits Division, Defendant-Respondent.†

Court of Appeals

*No. 90-1063. Submitted on briefs November 30, 1990.—Decided April 17, 1991.*

(Also reported in 469 N.W.2d 900.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph D. McDevitt* and *Steven T. Botzau* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *James J. Murphy* and *Keith R. Stachowiak* of *Gillick, Murphy, Wicht & Prachthauser* of Milwaukee.

On behalf of the respondent, Aetna Life Insurance Company, the cause was submitted on the brief of *Michael P. Van Alstine* of *Foley & Lardner* of Milwaukee.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J.   In this "slip and fall" case, a jury awarded the respondent, Jean M. Hannebaum, $735,000. The appellants are the defendants, Lakeshore, Ltd., owner of the building site where Hannebaum fell, and two tenants, the law firm of DiRenzo and Bomier and the accounting firm of DiRenzo, Simonis and Miller.

The issues we address on appeal are: (1) whether the special verdict should have inquired separately as to the alleged negligence of the multiple defendants; (2) whether the trial court properly excluded evidence of no

prior complaints or incidents relating to the steps on which Hannebaum fell; (3) whether the court correctly instructed the jury on the safe place statute; and (4) whether the special verdict should have inquired if Hannebaum's multiple sclerosis (MS) resulted from her slip and fall.

We affirm the trial court's rulings on all issues relating to liability. However, as to the issue on the "linkage" between Hannebaum's fall and her MS, we conclude that the trial court erred in failing to submit a special verdict question inquiring whether Hannebaum's MS resulted from the slip and fall. In light of this error, we have considered whether the answers in the special verdict nonetheless implicitly answered that Hannebaum's MS resulted from her fall. Because the jury verdict is ambiguous on this question, we cannot salvage the damage portion of the verdict. We therefore reverse the judgment and remand for a new trial on the question of whether Hannebaum's slip and fall caused her MS and on the issue of damages generally.

## FACTS AND TRIAL

Lakeshore, Ltd. owns the property and building at 231 East Wisconsin Avenue, Neenah, Wisconsin.[1] Lakeshore, Ltd. leased office quarters in the building to the law firm and the accounting firm. On December 21, 1984, Hannebaum and her husband attended a meeting

---

[1]The caption of this case identifies Lakeshore, Ltd. as a corporation. However, the parties' stipulation in the trial court advised that Lakeshore, Ltd. is a partnership owned by Mr. DiRenzo and Mr. Bomier. DiRenzo and Bomier, on behalf of Lakeshore, Ltd., leased quarters in the building to the law firm of DiRenzo and Bomier and the accounting firm of DiRenzo, Simonis and Miller.

with their accountants at this property. After their business was concluded, Hannebaum fell while descending the two steps which led from the building to a brick sidewalk. She fell on her buttocks and immediately felt severe pain in her back and legs. An ambulance conveyed her to a local hospital where she remained for several days.

Nearly four years later, in August of 1988, Hannebaum was diagnosed as suffering from MS. In July 1990, she commenced this negligence action, including a claim under the safe place statute. Single counsel represented the multiple defendants. A principal issue at the trial was whether Hannebaum's fall was a precipitating factor in activating her MS. Both Hannebaum and the defendants presented medical experts to support their competing theories. At the close of the evidence, Hannebaum argued that the trial court should bar the defendants from arguing to the jury that she would have acquired MS regardless of her fall. Conversely, the defendants argued that Hannebaum should be barred from arguing her theory that her fall precipitated the activation of her MS. The trial court, recognizing the evidentiary dispute on the question, correctly saw this as a jury question and ruled that each party could argue its theory on this issue.

With the perimeters of jury argument established, the trial court and counsel then considered the special verdict and jury instructions in an informal instruction and verdict conference. Following this conference, the trial court conducted a formal on-the-record proceeding at which the court documented its rulings and counsel registered their objections.

The defendants requested that the special verdict inquire separately as to their alleged negligence. The trial court denied this request, reasoning the defendants

were one entity for purposes of Hannebaum's negligence claims, including the safe place claims.

The defendants also requested that the trial court include the final paragraph of Wis J I—Civil 1900.4, the safe place standard instruction, pertaining to notice of the alleged defect. The court declined to deliver this portion of the instruction, concluding that the evidence undisputedly showed that the defendants had notice of the defect.

As to the MS issue, the defendants objected to the trial court instructing the jury pursuant to Wis J I—Civil 1720, Aggravation or Activation of Latent Disease or Condition. In support, the defendants recalled their earlier argument that the evidence did not support the instruction. Consistent with its ruling on the perimeters of jury argument on the MS issue, the court overruled the defendants' objection and stated that it would deliver the instruction.

Finally, the defendants requested that the special verdict include a question asking whether Hannebaum's MS was caused or precipitated by the accident. The trial court denied this request, reasoning that the jury's answers to other questions in the damage portion of the verdict would implicitly answer this question.[2] For instance, the court noted that Hannebaum sought damages for renovations to her home necessitated by her MS. Thus, the court reasoned that if the jury awarded these damages, it must have concluded that Hannebaum's MS resulted from her slip and fall.

---

[2]This reasoning does not appear in the record at the time the verdict and instructions were framed. Rather, the trial court remarked during the postverdict proceedings that at the time it denied the defendants' request, it believed the jury's answers to the damage questions would implicitly answer whether Hannebaum's MS resulted from her fall.

Based on this same logic, the trial court determined that it, rather than the jury, would answer the question of past medical expenses after the jury had returned its special verdict. The court noted that the evidence revealed one level of past medical expenses without consideration of MS-related damages; and another higher level of such expenses if the MS-related expenses were considered. The court reasoned that if the verdict implied that the jury had determined Hannebaum's MS was caused or precipitated by the accident, the court was to award the higher figure; if not, the lower figure.

In its verdict, the jury found the defendants seventy percent causally negligent and Hannebaum thirty percent contributorily causally negligent. The jury awarded Hannebaum damages as follows:

|   |   |   |
|---|---|---|
| (a) | Past wage loss | $125,000 |
| (b) | Future wage loss | $500,000 |
| (c) | Past medical expenses (to be answered by the court) | |
| (d) | Future medical expenses | $ 10,000 |
| (e) | Past and future pain, suffering and disability | $100,000 |
| (f) | Past home renovations | $ 0 |

As to Mr. Hannebaum's derivative action for loss of services, society and companionship, the jury awarded no damages.

At the postverdict proceedings, the defendants renewed the arguments asserted at the verdict and instructions conference. As to the "linkage" between Hannebaum's fall and her MS, the defendants argued that the award for future wage loss should be stricken because the other damage answers implicitly established that Hannebaum's MS was not linked to the accident. In

particular, the defendants noted: (1) the jury's failure to award damages for past home renovations—a damage category which came into play only if the MS was linked to the accident; (2) the jury's failure to award damages to Mr. Hannebaum for his derivative action; and (3) the jury's awards for past wage loss and future medical expenses, which were not at the levels suggested by Hannebaum's theory that her MS resulted from the accident.

In its postverdict ruling, the trial court acknowledged that the special verdict answers did not provide the implicit answers to the question of "linkage" between Hannebaum's MS and the accident. The court noted that, instead, the question was now "not particularly clear." Nonetheless, the court concluded that the verdict awards should stand, reasoning that the jury may have traded off certain categories of damages against others. At another point, the court evaluated the jury's action as "a compromise verdict in good conscience." The defendants appeal.

## LIABILITY ISSUES
### The Special Verdict

The defendants argue that the trial court erred by failing to ask separate verdict questions as to the alleged negligence of the owner, Lakeshore, Ltd., on the one hand, and the tenants on the other. The defendants reason that the duty of an owner under the safe place statute is different from those of a tenant who, pursuant to a lease, is charged with maintaining the property. We reject this argument on a number of grounds.

First, Lakeshore, Ltd., which owns the building, is a partnership owned by Mr. DiRenzo and Mr. Bomier. DiRenzo and Bomier, on behalf of Lakeshore, Ltd., leased quarters in the building to the DiRenzo and

Bomier law firm and the DiRenzo, Simonis and Miller accounting firm. The lease obligated the tenants to maintain the premises safely. As noted, the defendants were represented by the same counsel. This single representation continues on this appeal.

This collective representation by a single counsel created a clear opportunity for a conflict of interest in this case. However, the defendants did not file or assert any cross-claims for indemnification or contribution against each other. This minimized, to some degree, the opportunity for the conflict of interest to play itself out at trial.

However, defense counsel's request for differing and separate verdict questions, claiming that his clients owed Hannebaum different duties, enhanced the opportunity for the potential conflict of interest to materialize. In support of his request, defense counsel noted to the trial court that one of Hannebaum's accident versions placed *sole* liability on the owner, while another version placed *sole* responsibility on the tenants. Thus, the facially harmonious interests of the multiple defendants now became competing. Single defense counsel could not, obviously, represent both positions.

Although neither the trial court nor Hannebaum seized upon this ground as a basis for rejecting the defendants' request for separate verdict questions, we think it is compelling. The defendants created this dilemma by choosing their representation through a single counsel. They should not be permitted now to use this self-created situation to obtain a reversal of the jury's adverse liability determination and burden Hannebaum, an innocent party, with the costs and expenses of relitigating this phase of the lawsuit.

497

Second, the safe place statute requires not only owners *but also employers* to "construct, repair or maintain such place of employment or public building as to render the same safe" to employees and *frequenters*. Section 101.11(1), Stats. The record in this case reveals that both the tenant law firm and the tenant accounting firm are employers. The safe place statute makes no distinction between the duty of an owner and that of an employer.

The fact that a lease allocates safe place duties between an owner and an employer/tenant does not nullify the mutually shared duties of the owner and the employer under the statute. Thus, the duties of owner and tenants under the safe place statute were properly treated as the same in this case.

## PRIOR CLAIMS OR ACCIDENTS

The defendants next claim that the trial erred by excluding evidence that they had not received any prior complaints of defects concerning the stairs on which Hannebaum fell.

This is an evidentiary matter which is committed to the trial court's discretion. In *Callan v. Peters Construction Co.*, 94 Wis. 2d 225, 288 N.W.2d 146 (Ct. App. 1979), the court of appeals stated:

> when the prior accident is of little probative value, the trial judge, in his [or her] discretion, may refuse to admit such evidence. It is a decision resting with the trial court's discretion . . .. Evidence of prior accidents is allowed in the discretion of the trial judge. Both the purpose for which the evidence of other injuries similarly caused and the nature of the

negligence claimed are to be considered in determining whether discretion has been abused.

*Id.* at 232, 288 N.W.2d at 149.

While *Callan* deals with evidence of prior accidents, we conclude its rule is also applicable in a "negative evidence" case such as this where a party seeks to demonstrate a lack of prior claims or accidents.

The supreme court has characterized this kind of negative evidence in safe place cases as only "slightly probative." *Tiemann v. May,* 235 Wis. 100, 108, 292 N.W. 612, 616 (1940). Such evidence is generally held inadmissible because of its insignificant probative qualities and its tendency to introduce a multitude of collateral inquiries. *Id.* In light of the dubious value of such evidence, we see no abuse of discretion in the trial court's ruling excluding such evidence.

## JURY INSTRUCTION

Next, the defendants claim that the trial court erred by failing to include the final paragraph of Wis J I—Civil 1900.4. As adapted to the facts of this case, this paragraph reads:

> To find that the defendant failed to construct, repair or maintain the steps in question as safe as the nature of the place reasonably permitted, you must find that the defendant had actual notice of the alleged defect in time to take reasonable precautions to remedy the situation or that the defect existed for such a length of time before the accident that the defendant in the exercise of reasonable diligence should have discovered it in time to take reasonable precautions to remedy the situation.

Notice is not required as to structural defects. *See Hommel v. Badger State Inv. Co.*, 166 Wis. 235, 242, 165 N.W. 20, 22 (1917). Therefore, to the extent that the defendants' premises contained a structural defect, the court's refusal to instruct under the above language was correct.

The defendants, however, correctly argue that actual or constructive notice is required with respect to defects not associated with the structure. *See Fitzgerald v. Badger State Mut. Casualty Co.*, 67 Wis. 2d 321, 330–31, 227 N.W.2d 444, 448–49 (1975). The trial court determined, however, that the undisputed evidence showed that the defendants had actual notice of the icy conditions and the resulting danger on the premises. We agree.

Hannebaum fell at approximately 3:30 p.m. At about 1:00 p.m., the defendants' agent had salted the area where Hannebaum fell. Thereafter, the defendants were concerned enough to inquire of arriving clients about the continuing weather conditions. Yet, the defendants took no further precautions. The defendants do not dispute this evidence, but they argue that a jury question nonetheless existed as to whether the premises remained hazardous and icy after the premises were salted at approximately 1:00 p.m. We agree with the trial court's determination that this undisputed evidence leads to but one logical conclusion—the defendants were aware of the continuing inclement weather conditions and the hazard it created on their property after the salting. The court's decision to eliminate the "notice" language of the instruction was proper.

## THE ACCIDENT AND THE MS

The defendants argue that the trial court erred by failing to include in the special verdict a "linkage" question between the accident and Hannebaum's MS. We begin by precisely identifying the issue and the applicable standard of review.

In response to the defendants' argument, Hannebaum dwells at great length upon the sufficiency of the evidence to support the answers to the questions put to the jury and the correctness of the trial court's instructions. These responses miss the mark. The question is not the sufficiency of the evidence nor the correctness of the instruction. Rather, the defendants argue that, under the facts of this case, an essential question was improperly omitted from the special verdict.[3] With the issue thus identified, we now address it.

■■■

The form of the special verdict is a matter addressed to the trial court's discretion. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 465, 405 N.W.2d 354, 381 (Ct. App. 1987). In such a case, an appellate court will not interfere with the verdict if the material issues of fact are encompassed within the questions asked and appropriate instructions are given. *Id.* at 465, 405 N.W.2d at 381–82.[4]

---

[3]Section 805.12(2), Stats., addressing omitted issues, does not govern this question since the statute addresses an issue *not* brought to the attention of the trial court before the matter is submitted to the jury. Here the matter was brought to the attention of the court before the matter was submitted to the jury.

[4]We have considered whether the question is the sufficiency of the credible facts to warrant sending the particular question to the jury. *See Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 231, 358 N.W.2d 816, 821 (Ct. App. 1984). Such an inquiry presents a

In the vast majority of negligence cases, the form of the special verdict used in this case would well suffice. *See Schulz v. St. Mary's Hosp.*, 81 Wis. 2d 638, 654, 260 N.W.2d 783, 788 (1978). However:

> where . . . the plaintiff's damages resulting from an accident would be minimal unless a particularly serious mental or physical condition was also caused by the accident in question, and there is sharp conflict in the testimony as to whether such serious condition was caused by the accident, then a question [inquiring as to an additional fact] . . . is proper and often advisable.

*Id.* (quoting *Chapnitsky v. McClone*, 20 Wis. 2d 453, 463-64, 122 N.W.2d 400, 406 (1963)). In such a case, the failure to ask such a question is an error in the exercise of the trial court's discretion. *Id.* at 655, 260 N.W.2d at 788-89.[5]

Hannebaum argues, however, that this case is different from *Schulz* because here the trial court instructed the jury to award damages which were caused by the fall. While the *Schulz* court noted that the problem there was exacerbated by the trial court's refusal to instruct the jury that the damages must result from the incident,

question of law. *Id.* We conclude that this is not the issue. The trial court recognized that the competing evidence on the linkage between Hannebaum's MS and the accident presented a jury question. The court's refusal to include the defendants' specific question was not based on the sufficiency of the evidence. Rather, the court concluded that the verdict as constructed by the court was sufficient to obtain the jury's answer to this contested matter.

[5]While the defendants properly preserved this issue by requesting a "linkage" question, we observe that they did not specifically cite *Schulz v. St. Mary's Hosp.*, 81 Wis. 2d 638, 260 N.W.2d 783 (1978), to the trial court as authority for the request.

*Schulz* does not state that the giving of such an instruction necessarily solves the dilemma in all cases. While such an instruction *might* aid in solving the problem from a harmless error standpoint (a matter we will later discuss), the rule of *Schulz* is that a specific question addressed to linkage is required in an appropriate case.

Moreover, the *Schulz* court noted that the instructions given there did not differentiate between the causation of temporary discomfort and the causation of the more serious chronic condition. *Id.* at 654, 260 N.W.2d at 788. Although the instructions here were more complete than in *Schulz,* they also did not address any "temporary/chronic" differentiation. In this regard, the instructions here suffered from the same defect present in *Schulz.*

Hannebaum argues that cases decided since *Schulz* establish that the verdict and instructions in this case were adequate.[6] We disagree. These subsequent cases, involving though they do the review of a jury's award of damages, concerned wholly different facts and issues, and thus do not govern here. To the extent any parallels may be drawn, these cases represent nothing more than the case-by-case approach which this inquiry necessarily requires.

■

This case was not a mine-run "slip and fall" case. A slip and fall does not usually precipitate, cause or aggravate MS, resulting in verdict damages totaling $735,000. *Schulz* requires that, in an appropriate case, a specific linkage question must be given. This, we conclude, is such a case. Pursuant to *Schulz,* we conclude that the trial court erred in failing to grant the defendants'

[6]*See Brown v. Maxey,* 124 Wis. 2d 426, 369 N.W.2d 677 (1985); *Paper Mach. Corp. v. Nelson Foundry Co.,* 108 Wis. 2d 614, 323 N.W.2d 160 (Ct. App. 1982).

request that the special verdict inquire whether Hannebaum's fall precipitated or caused her MS.

Our conclusion that error occurred, however, does not resolve the matter, for we must additionally consider whether the jury's answers to the verdict nonetheless implicitly decided whether the accident caused Hannebaum's MS. This is, in essence, a harmless error analysis. If the error has not affected the substantial right of the party seeking reversal or a new trial, we are not to reverse the judgment. Section 805.18, Stats.

Both parties read the verdict to support their contrary positions.

The defendants argue that certain of the verdict answers support their claim that the jury found no linkage. They cite to the jury's failure to award damages for renovations to the Hannebaum home, the jury's failure to award Mr. Hannebaum damages for his derivative action, and the jury's past wage loss and future medical expense awards at levels consistent with a "no-linkage" theory. We agree with the defendants that these answers might support a "no-linkage" interpretation of the verdict.

Hannebaum argues that the jury's future loss of earning capacity award ($500,000) supports her claim that the jury found linkage. We agree with Hannebaum that this answer might support a linkage interpretation of the verdict. Hannebaum also offers certain theories as to why and how the jury may have answered those questions which do not explicitly support her linkage claim. She *may* be right.[7]

---

[7]For instance, Hannebaum reasons that the jury did not award home renovation damages because this expense would be recouped when the home was sold. The defendants counter that

The trial court's explanation offers yet another theory for the jury's answers—"a compromise verdict in good conscience." The trial court *may* be right.

The problem with these theories and explanations is that they take us into the realm of speculation as to what the jury actually concluded on the question of linkage between Hannebaum's MS and the accident. Again, we are not evaluating the sufficiency of the evidence—an exercise in which Hannebaum would be the beneficiary of a deferential standard of review. Rather, we are attempting to interpret an ambiguous verdict. The law does not favor one party over another in such an exercise.

The differing surmises of the defendants, Hannebaum and the trial court all invite us to speculate as to what the jury truly intended by its verdict. The defendants would have us interpret the verdict as a "no-linkage" determination and, from this, they ask that we direct the entry of judgment without the future wage loss component. Such would be unfair to Hannebaum because we are unable to interpret the verdict with reasonable certainty as the defendants urge. On the other hand, Hannebaum would have us interpret the verdict as a "linkage" determination and affirm the judgment with the future wage loss component. Such would be unfair to the defendants because, again, we are unable to interpret

such renovations would adversely affect the home's value, and, therefore, recoupment is unlikely and totally speculative.

Hannebaum reasons that the jury awarded no damages for Mr. Hannebaum's derivative action for loss of services, society and companionship because certain evidence indicated that Mrs. Hannebaum's disease actually strengthened their relationship. While this might explain the society and companionship aspects of this claim, it would not seem to explain the loss of services claim.

the verdict with reasonable certainty as Hannebaum urges.

We see no alternative but to reverse the judgment and order a new trial on the question of whether Hannebaum's slip and fall caused her MS and on the issue of damages generally.[8] A new trial on the liability aspects of this case is not required.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

---

[8]The defendants raise a number of other issues which we are not required to address in light of our holdings in this decision.