PER CURIAM.
¶ 1 Shawn Wallace appeals a judgment, entered upon a jury verdict, dismissing his claims against Central Mudracing Association, Inc. ("Central Mudracing"), and Chippewa Valley Antique Engine and Model Club, Inc. ("Chippewa Valley"), for injuries Wallace sustained while a spectator at a mud bog racing event in 2012. Wallace seeks a new trial for three reasons: (1) the circuit court erroneously excluded evidence of a 2005 accident at the track; (2) the court erroneously denied his motion for a mistrial based upon certain closing arguments suggesting that the 2012 accident was not foreseeable; and (3) the court erred by limiting the testimony of an accident reconstruction expert to matters involving general driving principles and driver perception and reaction times. We conclude the circuit court properly exercised its discretion in all respects and affirm.
BACKGROUND
¶ 2 Central Mudracing organizes what are known as "mud bog races" in conjunction with Chippewa Valley.[1] At such events, drivers race different classes of "mud buggy" vehicles on a dirt track. The events are held at locations throughout the state, including Pioneer Park in Eau Claire.
¶ 3 The track at Pioneer Park consisted of a mud pit in the center, which was approximately 35 feet wide and ran 150 feet from the west to the east. "Tough truck tracks," which involved a series of small jumps or moguls, ran parallel to the mud pit on the pit's north and south sides. There was no barrier between the mud pit and the tough truck tracks, but metal guardrails to the north and south of the tough truck tracks separated the tracks from spectators. There was also a woven wire-type fence beyond each of the guardrails to keep spectators off of the track.
¶ 4 During a June 30, 2012 event at Pioneer Park, Richard Woodford, one of the mudracing drivers, lost control of his vehicle, which spun toward the north and then accelerated rapidly. The vehicle struck the guard rail and went airborne into the crowd on the north side. Wallace, who was a spectator at the event, was seriously injured, eventually resulting in the amputation of one of his legs below the knee.
¶ 5 Wallace filed the present lawsuit against Woodford, Central Mudracing and Chippewa Valley, alleging negligence against each of them and negligence per se against Central Mudracing and Chippewa Valley. The case proceeded to a six-day jury trial. Woodford settled the claims against him following opening statements, and the jury found no negligence on the part of any of the defendants, including Woodford.[2]
¶ 6 Following the verdict, Wallace filed a motion for a new trial based on certain of the circuit court's evidentiary decisions and on allegedly improper closing arguments by Central Mudracing and Chippewa Valley. The court orally denied the motion, during which it reaffirmed its evidentiary decisions. As to the allegedly improper closing arguments, the court deemed Wallace's objection untimely but nonetheless found that, even if Wallace had timely objected, Wallace had not been prejudiced by the attorneys' statements. Wallace appeals those determinations. Additional facts will be set forth below as necessary.
DISCUSSION
¶ 7 Wallace first argues the circuit court erred by excluding evidence of a prior accident at Pioneer Park. Prior to trial, Chippewa Valley filed a motion in limine to preclude reference at trial to a 2005 accident involving Central Mudracing and Chippewa Valley, citing relevance and unfair prejudice concerns. Wallace opposed that motion. At the final pretrial conference, the circuit court precluded reference to the 2005 accident during opening statements and requested that an offer of proof be made outside the jury's presence if any party wished for the jury to hear the circumstances of that accident.
¶ 8 During Woodford's testimony, he was asked by Chippewa Valley's counsel, "[B]efore that unfortunate run on June 30, 2012, did it ever occur to you in your wildest imagination that that accident would occur?" Woodford answered, "No." On redirect examination, Wallace's counsel wished to ask Woodford about the 2005 accident, which Woodford had personally witnessed. Outside the jury's presence, Wallace then made an offer of proof, based solely upon Woodford's testimony, so the circuit court could determine the admissibility of that testimony.
¶ 9 The 2005 accident occurred at Pioneer Park during another mudracing event, but at a different location on the track. Woodford testified that, in the 2005 accident, the driver had just come out of the mud pit and was past the timing light when he "drifted to the right" and hit a jump on the tough truck track. The driver's vehicle "ended up hitting a pickup with some people sitting in it on the spectator side, which would be the south side of the setup." Woodford testified he did not "believe there were guardrails down that far [on the track]. They did change the track after that because of that accident."
¶ 10 Based on Wallace's offer of proof, the circuit court concluded the 2005 accident was "a horse of a different color" and excluded references to it at trial. The court reasoned that the accident location on the track was materially different-i.e., outside of the mud pit and in the shutdown area[3] -and the track had since been altered by the extension of the shutdown area and the extension of the metal guardrails. The court also determined that, based upon the evidence already in the record, Wallace could argue that Central Mudracing and Chippewa Valley "could have known or should have known that there was a possibility of one of these vehicles jumping the guardrail"-the same inference he desired the jury to reach by having Woodford testify about the 2005 accident.
¶ 11 Wallace appears to argue the circuit court erred in two ways: (1) by granting Chippewa Valley's motion in limine related to evidence of the 2005 accident; and (2) by refusing to strike allegedly improper portions of the defendants' closing arguments referencing a lack of similar accidents, or, in the alternative, by denying his motion for a mistrial. A circuit court has broad discretion when making evidentiary rulings. Martindale v. Ripp , 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. Similarly, a mistrial motion is directed to the court's discretion. State v. Albright , 98 Wis. 2d 663, 677, 298 N.W.2d 196 (Ct. App. 1980). We review a court's exercise of discretion not to see if we agree with the court's determination, but rather to determine "whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. A circuit court properly exercises its discretion when it considers the relevant facts, applies the correct law, and articulates a reasonable basis for its decision." State v. Jones , 2018 WI 44, ¶ 27, 381 Wis. 2d 284, 911 N.W.2d 97 (citation omitted).
¶ 12 We first address whether the circuit court properly exercised its discretion in excluding evidence of the 2005 accident. There is no per se rule regarding the admissibility of evidence of prior accidents. See Callan v. Peters Constr. Co. , 94 Wis. 2d 225, 231, 288 N.W.2d 146 (Ct. App. 1979). The circuit court must make an assessment of the evidence's probative value and consider both the purpose for which the evidence of the prior accident is offered and the nature of the negligence claimed. Id. at 232. The evidence may be admitted only where the accidents occurred "under conditions and circumstances similar to those of the accident which injured the plaintiff." Farrell by Lehner v. John Deere Co. , 151 Wis. 2d 45, 76, 443 N.W.2d 50 (Ct. App. 1989). When the prior accident is of little probative value, the court may, in the exercise of its discretion, refuse to admit such evidence. Id.
¶ 13 Here, we conclude the circuit court appropriately exercised its discretion in granting Chippewa Valley's motion in limine. The facts of record demonstrate that the 2005 accident occurred on a materially different portion of the track, beyond the mud pit and at a location without guardrails.[4] Woodford-the only witness in Wallace's offer of proof-testified that the vehicle's 2005 accident-causing movement occurred after it had left the end of the mud pit. Furthermore, there was no evidence that the 2005 accident involved driver acceleration after the vehicle had spun out of control. The spectators injured in the 2005 accident were viewing from a truck, not the bleachers. Subsequent remedial measures were taken in response to the 2005 accident, including the extension of the guardrail in the shutdown area. The court reasonably determined that, under these circumstances, the probative value of the proposed testimony regarding the issue of foreseeability was minimal. Moreover, the court concluded Wallace could suggest that the jury draw the desired inference regarding foreseeability even without the evidence of the 2005 accident. The court, relying on the facts of record and the proper law, reasonably determined that the low probative value of the evidence was easily overcome by the danger of unfair prejudice, and that the evidence was not necessary for Wallace to argue his desired inferences to the jury.
¶ 14 Wallace argues the circumstances of this case are analogous to those in Callan . In Callan , however, this court was reviewing the circuit court's exercise of discretion to admit evidence of a prior slip-and-fall accident. See Callan , 94 Wis. 2d at 231. The circuit court reasonably determined in that case, based on what it deemed "overwhelming evidence," that the slip-and-fall accidents were substantially similar. Id. at 234. Such a conclusion in a different case does not establish that the circuit court erroneously exercised its discretion in reaching a contrary conclusion here based on much different evidence. Our standard of review regarding such evidentiary decisions is critical.
¶ 15 Relatedly, Wallace also argues the circuit court erred by permitting Central Mudracing and Chippewa Valley to make improper closing arguments.[5] Wallace points to three specific instances in which he contends Central Mudracing made impermissible closing arguments:
• "A track that's been safe for years, that's been the same way for years, that no vehicle has ever encountered the guardrail and propelled itself over, that no vehicle has ever left the track, pressed the accelerator, and entered a place where people were seated."
• "Plaintiffs' counsel talked about foreseeability. There's absolutely no reason why this would be foreseeable for [Central Mudracing]."
• "No one had any concerns about [the track], no one raised any concerns to Central Mudracing Association, and there had been no other accidents for them to have any notice that they should be doing something differently."
Wallace also takes issue with two statements Chippewa Valley's attorney made during its closing argument, which immediately followed Central Mudracing's closing argument:
• "Who could possibly imagine after 17 years of racing that one of the mud bog racers, while turned north within the mud pit, would overaccelerate out, lose control on the [tough] track, accelerate over the guardrail and into people. Who could foresee that?"
• "[I]t just had never happened before. There was nothing to indicate to Chippewa [Valley] or [Central Mudracing] that this was the type of hazard that they had to take special precautions for."
¶ 16 Wallace's contention appears limited to the notion that the 2005 accident and the 2012 accident were substantially similar, and it was therefore "patently prejudicial" for the court to permit defense counsel to argue there had not been a similar prior accident. Wallace seems to contend that allowance of counsel's "nothing like this happened before" arguments combined with the disallowance of any evidence of the 2005 accident, improperly caused the jury to conclude no prior accident ever happened during the years of mud racing at the site, which he further assumes prejudiced him. We reject this argument and affirm the court's exercise of discretion in denying Wallace's mistrial motion.
¶ 17 To obtain a new trial based upon improper remarks by counsel, it is necessary for Wallace to demonstrate their prejudicial effect-that is, Wallace must show that the error contributed to the outcome of the proceeding. See Schneck v. Mutual Serv. Cas. Ins. Co. , 23 Wis. 2d 649, 658, 128 N.W.2d 50 (1964) ; see also WIS. STAT. § 805.18. Because the circuit court had granted Chippewa Valley's motion in limine, the jury was unaware of the 2005 accident. Thus, to demonstrate prejudice, Wallace must at a minimum show that the circuit court erroneously exercised its discretion in excluding evidence regarding the 2005 accident or that the attorneys' closing arguments were not reasonably based on the evidence of record. See Affett v. Milwaukee & Suburban Transp. Corp. , 11 Wis. 2d 604, 607, 106 N.W.2d 274 (1960). We have already determined that the court properly excluded evidence of the 2005 accident based upon the dissimilarities between that accident and the one that occurred in 2012.
¶ 18 We reject Wallace's remaining contention that the attorneys' closing arguments were false and patently prejudicial. Contrary to Wallace's belief, neither attorney claimed that no accident had ever occurred on the track. Both Central Mudracing and Chippewa Valley focused on the specific circumstances of the accident in this case-in particular, that Woodford twice accelerated while spinning out in the middle of the mud pit-in remarking that such an accident had never occurred before. Although certain of Central Mudracing's comments walk a fine line when viewed in isolation-i.e., counsel's statements that the track had "been safe for years" and that there had been "no other accidents for them to have any notice that they should be doing something differently"-we must view counsel's arguments in context. See Featherly v. Continental Ins. Co. , 73 Wis. 2d 273, 284, 243 N.W.2d 806 (1976). In doing so, we perceive counsels' arguments to have been both reasonable commentary based on the evidence of record, and substantially true.[6]
¶ 19 Wallace relies on Hannenbaum v. Direnzo & Bomier , 162 Wis. 2d 488, 469 N.W.2d 900 (Ct. App. 1991), in support of his argument. In that case, this court observed that "negative evidence," in which a party seeks to demonstrate a lack of previous accidents, is "generally held inadmissible because of its insignificant probative qualities and its tendency to introduce a multitude of collateral inquiries." Id. at 499. This statement does not help Wallace, however, because the Hannenbaum rule is general in nature and subject to deviation in the court's discretion. In any event, it is not clear to us that the Hannenbaum rule is still good law, as our supreme court, in Glassey v. Continental Insurance Co. , 176 Wis. 2d 587, 500 N.W.2d 295 (1993), held that "negative evidence" is admissible as long as the "witness [is] in a position to testify on the basis of personal knowledge or experience that the event did not occur." Id. at 606 (quoting D.L. v. Huebner , 110 Wis. 2d 581, 622, 329 N.W.2d 890 (1983) ). Wallace does not argue any of the witnesses who presented "negative evidence" in this case lacked personal knowledge. Finally, the analogy to "negative evidence" is inapt here because attorneys' arguments are not evidence, as the jury in this case was properly advised.
¶ 20 Finally, Wallace argues the circuit court erroneously exercised its discretion when it excluded certain proposed expert testimony from Gregory Gravesen, a crash reconstruction specialist. Gravesen was originally named an expert witness for Woodford; Wallace had not named any engineering experts, and he had later filed a motion to amend his expert witness list to add a liability expert. Woodford objected to Wallace's request, and Wallace voluntarily withdrew the motion during a hearing.[7]
¶ 21 Gravesen, while being retained by Woodford, had provided Woodford with a report in which he offered seven opinions:
1) The primary contributing factor for this incident was the poor design of the track. When considering the traveling speeds of the buggies involved in the race, the distance between the spectators and the track was not sufficient to allow for safe viewing of the event.
2) A typical perception-response time for drivers is 1.6 seconds. A buggy traveling at 42 mph would travel approximately 99 feet during this perception-response phase. A buggy traveling 50 mph would travel approximately 117 feet during this perception-response phase.
3) The design of the track did not afford the driver of the buggy sufficient time or distance to prevent this incident. If the reactionary distance between the track and spectators had been increased, the driver of the buggy would have had additional time to decelerate and regain control of the buggy before getting to the spectator area.
4) Another contributing factor for this incident was the roughness of the mud pit. Mr. Woodford's buggy was the last run for his racing class. There were ruts in the mud created from buggies traveling through the pit prior to this incident. The rough condition of the mud pit contributed to the instability of the buggy.
5) A third contributing factor for this incident was the proximity to the Tough Truck track. If a buggy experienced any type of instability, it would likely end up traveling onto the Tough Truck track. Since this track consists of moguls, the instability the buggy was experiencing would likely [become] worse as it interacted with these features. At the very least, interaction with the Tough Truck track's features would diminish the ability for the buggy driver to regain control and/or stop.
6) Mr. Woodford's management and control of the buggy was not a contributing factor for this crash sequence. The buggy did not appear to have had any steering input that would have initiated or contributed to the buggy's instability.
7) When considering the time which had elapsed from when the buggy exited the mud pit to the point where it entered the spectator area, along with the reported perception-response time of 1.6 seconds, Mr. Woodford would not have had sufficient time or distance to perceive, respond, and avoid this collision.
When Wallace settled with Woodford at trial, Woodford withdrew his witnesses, including Gravesen, and assigned them to Wallace. Thus, Gravesen, who had once been a defense witness, became a plaintiff's witness for the purpose of minimizing the culpability of the settling defendant.
¶ 22 Prior to trial, Central Mudracing had objected to Gravesen's proposed testimony, arguing Gravesen's expertise as an accident reconstruction specialist did not permit him to opine about the condition of the mud pit, the track design, or Woodford's management of his vehicle as potential contributing causes of Wallace's injury. In Central Mudracing's view, permissible topics for Gravesen to opine about included driver "recognition, reaction and stopping distances and calculations." Chippewa Valley filed its own motion echoing these arguments.
¶ 23 The circuit court took up this objection after some initial testimony from Gravesen at trial concerning his credentials, which involved extensive accident reconstruction training and experience. However, Gravesen stated he was "not a racer," he had "no experience with these types of [mud] vehicles and the mechanic concepts behind them," and his lack of experience and knowledge could affect his ability to offer an opinion on some matters. Gravesen testified Woodford had hired him to "basically evaluate the vehicle speed," which Gravesen was "able to do ... in a limited manner, in this case, based on the video that you have seen."[8] Based on the vehicle's speed, Gravesen testified he was able to "evaluate the time required for perception-response and whether or not the driver of the buggy had sufficient distance to perceive, respond, and do something to avoid this collision."
¶ 24 Upon some follow-up questioning, the circuit court excused the jury and stated it would invoke WIS. STAT. § 906.11, which provides courts with discretion over the "mode and order" of presenting evidence. Because it appeared to the court that Wallace was eliciting testimony with the purpose of seeking to admit Gravesen's report, the court stated it wanted to articulate its conclusions about the permissible scope of Gravesen's testimony. The court concluded Gravesen could testify regarding "driver principles in general," perception time, and driver response time.
¶ 25 However, the circuit court prohibited Gravesen from discussing "poor design, lousy design, no good design, because there aren't any issue[s] of fact for the jury to decide in that regard" based upon the jury instructions the parties had submitted, and because Gravesen was not qualified to testify regarding the track design. The court also prohibited Gravesen from offering his opinion that the roughness of the mud pit, its proximity to the tough truck track, and Woodford's speed were contributing causes for the accident. The court concluded such testimony impermissibly invaded the province of the jury and was not a proper subject for Gravesen's expert testimony. The court stated the jury had "seen the entirety of the incident in excruciating detail, so there really isn't anything to reconstruct." The court also precluded Gravesen from testifying regarding whether Woodford had sufficient time or distance to stop, as "this isn't a road surface where we can calculate coefficient of friction and things of that sort." However, it permitted Gravesen to testify regarding his analysis of the video recording, and it left open the possibility that it would revisit its rulings based upon that testimony.
¶ 26 When Gravesen's testimony resumed, Wallace's counsel asked few questions. The jury heard Gravesen testify that the typical perception-response time is 1.6 seconds, and that, based upon his frame-by-frame analysis of the accident footage, he calculated 0.9 seconds had elapsed between the time Woodford's vehicle left the mud pit and the time when his wheel was on top of the guardrail. On cross-examination, Gravesen admitted that he had no experience with "mud bogging" and that "none of those kinds of things typically used [in accident reconstruction were] available" to him in this case. Gravesen also admitted that he had "no idea" how mud would tend to affect a vehicle's speed. The court later refused to receive into evidence Gravesen's report on hearsay grounds.
¶ 27 Wallace's postverdict motion for a new trial and his arguments on appeal contend the circuit court erred in preventing Gravesen from testifying as to all of the conclusions he reached in his report. The parties agree WIS. STAT. § 907.02 contains the standard to be applied when determining the admissibility of expert testimony. Among other things, the statute requires that a witness be qualified to offer the anticipated testimony, which depends on "whether he or she has superior knowledge in the area in which the precise question lies." State v. Swope , 2008 WI App 175, ¶ 24, 315 Wis. 2d 120, 762 N.W.2d 725 (citation omitted). The statute also requires that the witness's "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Sec. 907.02(1).
¶ 28 Here, we perceive no error in the circuit court's exercise of discretion limiting the scope of Gravesen's testimony. Wallace offers the conclusory argument, without citation to law or to the appellate record, that Gravesen's "testimony and analysis [are] based upon methods utilized by others in his field." However, Gravesen's testimony related to the design and composition of the mud pit and track were matters clearly outside the realm of Gravesen's expertise. With respect to Woodford's ability to stop his vehicle, the court permitted Wallace to elicit testimony that would have laid the foundation for such testimony. However, Wallace failed to take advantage of that opportunity when Gravesen's direct examination resumed. He also failed to make an offer of proof regarding any bases for concluding Gravesen had any further relevant expertise.
¶ 29 Wallace argues Gravesen was "prepared to testify that the layout of the track and proximity of the crowd did not provide enough clearance for the spectators to react in time to avoid the collision." This conclusion was apparently contained in an earlier report, and it was a matter that Wallace's attorney affirmatively stated he would not be inquiring about at trial. In any event, Gravesen was briefly asked about this matter during cross-examination. He testified that even if the spectators were located five or ten feet north of where the accident occurred, it
is not going to make a difference at that point, because the other aspect of this is the buggy's not totally in contact with the ground for quite a period of time.... So you're not going to get any type of [e]ffective braking or steering until all four wheels are on the ground and that buggy is stabilized.
¶ 30 Wallace argues the circuit court based its exercise of discretion upon WIS. STAT. § 906.11, and in doing so applied an improper legal standard. To the contrary, the court invoked § 906.11 merely to excuse the jury, in an effort to ensure that the testimony Wallace was about to elicit from Gravesen met the minimum requisites of WIS. STAT. § 907.02(1). Although the court did not state explicitly that its exercise of discretion in limiting Gravesen's testimony was based upon the requirements of § 907.02(1), the reasoning it articulated was clearly an application of the factors identified in that statute.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Central Mudracing is the sanctioning body for the event, while Chippewa Valley is the promoter.

Two jurors dissented on the question of whether Woodford was negligent. No jurors dissented as to the lack of negligence by Central Mudracing and Chippewa Valley.

The shutdown area appears to be a non-mud area in which cars would come to a stop after exiting the mud pit.

Wallace argues Woodford testified inconsistently about the presence of guardrails in 2005 in the area of the accident. Woodford was initially asked to give a general description of what occurred and said, "The race car came out at the end of the track[,] veered to the right, hit a berm flipped into -- went over the guardrail and injured some people." Central Mudracing's counsel later observed that the guardrail was extended subsequent to the 2005 accident. Wallace's counsel countered that there had been no testimony regarding alterations to the track. The circuit court then asked a series of follow-up questions, including about the guardrails. In response, Woodford testified that the 2005 accident occurred at a location on the track that had no guardrails, and, when asked specifically whether the vehicle had "jumped the metal guardrail," he responded that at the time he "[did not] believe there were guardrails down that far." Given Woodford's subsequent, clarifying testimony in response to the court's direct questions, we do not perceive him to have testified inconsistently about whether there were guardrails in the area of the 2005 accident. In any event, the existence and weight given to any inconsistency in the testimony were matters properly resolved by the circuit court in deciding whether the exclude the evidence in question.
Wallace also argues the circuit court concluded, without sufficient evidence, that the length of the shutdown area had been expanded in response to the 2005 accident. In his reply brief, Wallace appears to concede that the shutdown area was expanded, although he argues the court's statements were inconsistent about how far the shutdown area had been expanded and this inconsistency apparently demonstrated a "misapplication and analysis of facts." We decline to infer that any inconsistency regarding the degree to which the shutdown area was expanded "tainted" the circuit court's entire analysis. Regardless, Wallace's main point appears to be that "the length of the shutdown area is not even a relevant factor to either accident, as neither one occurred in the shutdown area."
Finally, by repeatedly suggesting that the 2005 accident occurred in the mud pit, Wallace may be asserting the circuit court's finding that the accident occurred in the shutdown area was clearly erroneous. The precise location of the accident was a matter thoroughly vetted by the circuit court in its questioning. Any arguable inconsistency in Woodford's testimony regarding whether the accident occurred at the very end of the mud pit or in the shutdown area was properly resolved by the circuit court. Moreover, as the proponent of the evidence, it was Wallace's obligation to clarify any unclear or ambiguous testimony regarding the location of the accident.

Some of Wallace's record citations related to closing arguments incorrectly refer to the day-two trial transcript. As far as we can tell, all closing arguments occurred on day five of the trial. More generally, Wallace's brief in some instances fails to provide a record citation altogether and cites only to his appendix. Central Mudracing's brief also contains inaccurate record citations. These are violations of the Rules of Appellate Procedure. We remind all parties that this is a high-volume court. State v. Bons , 2007 WI App 124, ¶ 21, 301 Wis. 2d 227, 731 N.W.2d 367. Accurate record citations are not only required by statute, see Wis. Stat. Rule 809.19(1)(d)-(e), (3)(a)2. (2015-16), but are also essential to the timely performance of our duties, see Keplin v. Hardware Mut. Cas. Co. , 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964). This court has no duty to scour the record to review arguments unaccompanied by adequate record citation. Roy v. St. Lukes Med. Ctr. , 2007 WI App 218, ¶ 10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Given the circuit court's ruling on Chippewa Valley's motion in limine, Wallace's counsel waited until the jury had left the courtroom to object to the closing argument. With respect to the circuit court's conclusion that Wallace's motion for a mistrial came too late, we decline to reach this issue because we conclude that Wallace's appellate arguments fail on their merits. See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (holding that the court of appeals need not address all issues raised by the parties if one is dispositive).

Central Mudracing notes the transcript of the motion hearing is not in the appellate record, but Wallace does not object to Central Mudracing's assertion and his amended witness list does not designate Gravesen as an expert he intended to call at trial.

Video recordings of the accident were shown to the jury. In addition to the video recording, Gravesen testified he reviewed police photographs, Woodford's deposition transcript, and a two-page document from an engineering firm that contained the track measurements.