CHAPNITSKY, Appellant, v. McCLONE and others, Respondents.

*June 6—June 28, 1963.*

454

456

458

For the appellant there were briefs by *L. H. Chudacoff* of Appleton, and *Dudley O. Emmert* of Manitowoc, and oral argument by *Mr. Emmert*.

For the respondents there was a brief by *Everson, Whitney, O'Melia & Everson* of Green Bay, for Kunitz and the Iowa National Mutual Insurance Company, and by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, for McClone and the Aetna Casualty & Surety Company, and oral argument by *John C. Whitney* and *David L. Fulton*.

CURRIE, J. Plaintiff appellant contends on this appeal that he is entitled to a new trial because the circuit court committed prejudicial error in these respects:

(1) In admitting in evidence hospital records and X rays without proper authentication as prescribed by sec. 327.25, Stats. 1961.

(2) In sustaining objections to two questions put to Dr. Marshall, plaintiff's medical expert, during redirect examination.

(3) In submitting Question No. 5 of the special verdict.

(4) In framing Question No. 6 of the special verdict in such manner that the jury was directed not to answer the subdivisions thereof so as to find damages if it answered Question No. 5 "No."

(5) In giving a "but for" instruction on causation in that portion of the charge to the jury relating to Question No. 5 of the special verdict.

Plaintiff further requests that this court grant a new trial in the interest of justice under sec. 251.09, Stats., if it concludes that one cannot be awarded on the basis of prejudicial error.

### Admission of Hospital Records and X rays.

On direct examination, Dr. Marshall expressed a medical opinion highly favorable to plaintiff. Upon cross-examination he conceded that one of the bases for this opinion was his clinical knowledge of plaintiff. He also admitted that this clinical knowledge was partly gained from the hospital records covering plaintiff's various hospitalizations from 1953 through 1961 and also from various X rays taken of plaintiff's leg from 1953 through the accident of March 16, 1959. By stipulation and testimony it was established that these were the hospital records and X rays of plaintiff but, except for notations on these records signed by Dr. Marshall and corroborated by him, none of the other persons who had made entries in the records, or had actually taken the X rays, were called as authenticating witnesses.

After the conclusion of the cross-examination of Dr. Marshall, defendants offered the hospital records and X rays in evidence. Plaintiff objected on the ground that they had not been properly authenticated. The trial court admitted them for the limited purpose of the cross-examination of Dr. Marshall and for the use of defendants' medical experts in giving their testimony but ruled that such hospital records and X rays would not be permitted to go to the jury. Defendants' medical experts, Drs. Kaufman and Nellen, did rely on these hospital records and X rays in giving opinion testimony adverse to plaintiff. Therefore, if the trial court

erred in permitting this use of them, such error was prejudicial. However, we find no error.

Plaintiff relies upon our decision in *Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. (2d) 16, 115 N. W. (2d) 612, which is succinctly summarized in headnote 1 as follows:

"The supreme court cannot interpret sec. 327.25, Stats., relating to the admissibility in evidence of entries made in the usual course of business, no matter how liberally, so as to excise from the statute the express requirement therein that entries must be identified by the testimony of the entrants if it is not shown that they are beyond the jurisdiction of the court or are insane."

Nevertheless, the *Rupp* decision did not repudiate the rule of *Sundquist v. Madison Railways Co.* (1928), 197 Wis. 83, 221 N. W. 392, but instead expressly distinguished it. In the *Sundquist Case,* objection was made to the testimony of plaintiff's medical expert, in giving a diagnosis which was partially based upon a report of the results of examinations made by hospital technicians, because these technicians were not called as witnesses and their reports were not received in evidence. This court upheld the trial court's overruling the objection and stated (p. 87):

"In making a diagnosis for treatment physicians must of necessity consider many things that do not appear in sworn proof on the trial of a lawsuit,—things that mean much to the trained eye and touch of a skilled medical practitioner. This court has held that it will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true. *Leora v. M., St. P. & S. S. M. R. Co.* 156 Wis. 386, 395, 146 N. W. 520."

In *Rupp* we commented upon the holding in the *Sundquist Case* as follows (p. 20):

"Underlying this decision is the concept [that] the hospital records, although hearsay, were trustworthy as a basis for a medical conclusion because one in a position to know accepted and relied upon them in the important daily affairs of mankind."

Thus there is no question concerning the propriety of Dr. Marshall's basing his medical opinion upon his clinical knowledge obtained in part from the hospital records and X rays in question even though they were hearsay in the absence of the authenticating testimony required by sec. 327.25, Stats. 1961. It is also obvious that defendants' counsel could properly use them for the purpose of cross-examining Dr. Marshall. The closer question is whether it was proper to admit them for the further limited purpose of permitting defendants' medical experts to base their opinion testimony on them. None of the briefs submitted cite any authority on this precise point. Surprisingly, independent research on our part has also failed to unearth a single case passing on this question. The preservation of the spirit of fair play inherent in our adversary system of trying lawsuits seems to us to lead to but one conclusion: If plaintiff's medical expert has relied on hospital-record entries and X rays not in evidence in testifying to a diagnosis or medical opinion, then defendants' medical experts should be accorded the same privilege. Therefore, we approve the challenged ruling of the trial court.

*Redirect Examination of Dr. Marshall.*

On direct examination, Dr. Marshall was asked about "the significance of the prior 1953 injury as reflected in the condition [of plaintiff] as of March 16, 1959." He replied that the 1953 fracture "had certainly healed" and "[t]here was no evidence of activity of any infection which had been present prior to even 1957, . . ." He was asked to express his opinion based on reasonable medical probabilities "wheth-

er, but for this accident of March 16, 1959, the amputation would have been necessary." His answer was, "My opinion is that the accident as given to me, of what occurred, including my subsequent findings—my opinion is that amputation would not have occurred in this extremity except for the accident of March 16, 1959."

On cross-examination Dr. Marshall was questioned in detail concerning plaintiff's medical history from the time of the 1953 accident up to and beyond the accident of March 16, 1959. Then on redirect examination the witness was asked these two questions:

"*Q.* Now, doctor, I believe just one more question. There has been paraded here the history of Mr. Chapnitsky's record, medical record, since 1953. I ask you of what, if any, relevancy is there to this history from 1953 up to March, 1959, when this auto accident occurred?

"*Q.* What, if any, bearing do the 1953 injuries have upon the condition of Boris Chapnitsky's leg as it was on March 16, 1959, when this accident occurred?"

Defendants' counsel objected to both questions on the ground that they invaded the province of the jury. The trial court sustained the objections to both questions. Plaintiff contends this ruling constituted prejudicial error. The questions were not objectionable on that ground. This same issue was recently before us in *Fehrman v. Smirl,* ante, pp. 1, 18, 121 N. W. (2d) 255, and we therein stated:

"It is urged that these questions and answers were incompetent because they invaded the province of the jury. This court, however, is committed to the principle that expert opinion testimony is not objectionable merely because it covers one of the ultimate facts to be determined by the jury. *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 76, 117 N. W. (2d) 646; *Zarnik v. C. Reiss Coal Co.* (1907), 133 Wis. 290, 301, 113 N. W. 752; and *Daly v. Milwaukee* (1899), 103 Wis. 588, 590, 79 N. W.

752. See also 7 Wigmore, Evidence (3d ed.), p. 18, sec. 1921."

Nevertheless, we find no prejudice as a result of the trial court's sustaining these objections since Dr. Marshall had voiced his opinion on direct examination with respect to the same issue which these two questions sought to raise on redirect examination. Furthermore, the form of the first of these two questions was objectionable because the relevancy inquired about was not connected to any particular point at issue in the case.

*Submission of Question No. 5 of the Verdict.*

When the trial court submitted the proposed form of the special verdict to counsel, plaintiff's counsel objected to the inclusion of Question No. 5. By his motions after verdict, plaintiff also assigned the submission of this question as one of the grounds for a new trial. The basis for his objections to this question is that it constitutes an improper cross-examination of the jury. Nevertheless, the issue of whether the accident of March 16, 1959, caused the amputation of plaintiff's leg was in no sense evidentiary but rather one of ultimate fact. Aside from the questions of negligence, it was the single critical issue in the case. All of the medical expert opinion evidence was directed to it. In such a situation it was proper for such a question to be included in the special verdict. *Fehrman v. Smirl, supra,* page 28; and *Sharp v. Milwaukee & S. T. Corp.* (1963), 18 Wis. (2d) 467, 481, 118 N. W. (2d) 905.

We do not recommend in mine-run personal-injury actions that the jury be interrogated as to whether certain particular injuries of plaintiff were caused by the accident. Nevertheless, where, as here, plaintiff's damages resulting from an accident would be minimal unless a particularly serious mental or physical condition was also caused by the

accident in question, and there is sharp conflict in the testimony as to whether such serious condition was caused by the accident, then a question such as embraced in Question No. 5 is proper and often advisable.

*Manner of Framing Question No. 6 of Verdict.*

Question No. 6 (the damage question) of the special verdict was so framed that the jury was not required to answer any subdivisions thereof unless it answered Question No. 5 "Yes." On this appeal plaintiff raises two objections to the form of Question No. 6: (1) It informed the jury of the legal effect of its verdict; and (2) plaintiff sustained damages from the instant accident irrespective of whether such accident caused the amputation. Nevertheless, plaintiff is precluded from raising both of these objections on this appeal.

At the time the trial court submitted the proposed form of the special verdict to counsel prior to their closing arguments, a colloquy took place between court and counsel during which plaintiff's counsel repeatedly objected to the submission of Question No. 5 and finally consented to the framing of Question No. 6 as submitted. By this consent, plaintiff's counsel apparently concluded that it was to plaintiff's advantage to have Question No. 6 so framed because the jury would realize that the only way they could award plaintiff any damages would be to answer Question No. 5 "Yes." Having elected to take such a gamble, plaintiff thereby waived his right to later object to the form of Question No. 6. As this court declared in *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 364, 34 N. W. (2d) 116:

"Counsel may not accept the language of the trial court as used in the special verdict without objection, wait and see whether the answers of the jury are satisfactory and, if not,

then for the first time complain about the phraseology upon appeal."

See also *Smith v. Benjamin* (1952), 261 Wis. 548, 554, 53 N. W. (2d) 619.

A further reason why plaintiff cannot raise the alleged error in the framing of Question No. 6 as a matter of right on this appeal is that he failed to even mention Question No. 6 in alleging his grounds for a new trial in his motions after verdict. See *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 515, 80 N. W. (2d) 380.

*"But For" Instruction on Causation.*

The portion of the charge to the jury to which plaintiff here objects is contained in the first sentence of the following paragraph of the charge:

"You are instructed that before you can find that the collision of March, 1959, was a cause of the amputation in August of 1959 you must find that the amputation would not have been required but for the collision, or that it would have been required even though the collision had not occurred. You must be satisfied that the injuries received in the collision, if any, were substantial factors in causing the amputation. That is that the results of the collision became factors and substantially contributed to the amputation as a natural result. The word 'substantial' as used here means that the collision must have had such an effect in producing the amputation as to lead reasonable men and women to regard it as a cause. If the results of the collision, to Mr. Chapnitsky, were so insignificant that no ordinary mind would think of them as causes, then they would not be substantial factors in producing the amputation."

A discussion and criticism of the "but for" test of causation is found in Prosser, Law of Torts (2d ed.), pp. 220, 221, sec. 44. The author concedes that it is a satisfactory test to apply in the great majority of cases but that it is inadequate in the following type of situation:

"If two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed. Two motorcycles simultaneously pass the plaintiff's horse, which is frightened and runs away; either one alone would have caused the fright. A stabs C with a knife, and B fractures C's skull with a rock; either wound would be fatal, and C dies from the effects of both. The defendant sets a fire, which merges with a fire from some other source; the combined fires burn the plaintiff's property, but either one would have done it alone. In such cases it is clear that each cause has played a part in the result, and it is also clear that neither can be absolved from responsibility upon the ground that the harm would have occurred without it, or there would be no liability at all." Ibid.

Plaintiff contends that the instant case falls within the group of cases described in the above-quoted extract from Prosser. His contention is apparently based upon the premise that there were two causes of the amputation—the preexisting osteomyelitis infection and the accident of March 16, 1959. In the above-quoted extract, however, Prosser is not discussing all cases in which two causes produce an end result, but only those limited few in which either cause alone would have been sufficient to produce such an end result. The instant case is clearly not of that limited type because, under the evidence the minor jar of the instant accident could never have caused the amputation without the preexisting osteomyelitis infection and the condition resulting from the osteotomy performed a month before. On the other hand, there was conflicting evidence as to whether the preexisting osteomyelitis infection alone, without the intervention of the March 16, 1959, accident, would have caused it. The "but for" test instruction was therefore not erroneous because if the osteomyelitis infection alone, without the intervention of the March 16, 1959, accident, would have resulted in the amputation, then such accident was not a

substantial factor in causing the amputation. The substantial-factor test of causation is the one approved by Prosser and by this court. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29. See also Campbell, Duty, Fault, and Legal Cause, 1938 Wisconsin Law Review, 402. This test was also set forth in the above-quoted paragraph of the charge following the sentence containing the "but for" test.

*New Trial in the Interest of Justice.*

We turn now to plaintiff's request that, if we fail to reverse for prejudicial error on the grounds previously discussed, we exercise our discretionary power under sec. 251.09, Stats., and grant a new trial in the interest of justice. This court will not exercise this discretion unless it is convinced that there has been a probable miscarriage of justice—viewing the case as a whole. *Mack Trucks, Inc., v. Sunde* (1963), 19 Wis. (2d) 129, 138, 119 N. W. (2d) 321, and *Gile v. Widholm* (1962), 17 Wis. (2d) 275, 280, 116 N. W. (2d) 249. Our review of the instant record does not convince us that the instant jury verdict probably constituted a miscarriage of justice.

*By the Court.*—Judgment affirmed.