125 Wis.2d 399 (1985)
373 N.W.2d 55
IN RE the PATERNITY OF T.L.S.: STATE EX REL. T.R.S., Plaintiff-Respondent,
v.
L.F.E., Appellant.[]
No. 83-1790.
Court of Appeals of Wisconsin.
Submitted on briefs June 17, 1985.
Decided July 11, 1985.
*400 For the appellant the cause was submitted on the briefs of John C. Wickhem and Theodore V. Lyons, Jr., and Wickhem, Buell, Meier, Wickhem & Southworth of Janesville.
For the plaintiff-respondent the cause was submitted on the brief of David L. Belling, assistant district attorney.
Before Gartzke, P.J., Dykman, and Eich, JJ.
EICH, J. L.F.E.,
who was adjudged the father of T.L.S. after a jury trial, appeals from the judgment and the trial court's order denying his postverdict motions.
There is a single issue: whether the trial court erred when it permitted medical experts to testify about computer-aided blood tests. We conclude that the trial court properly allowed the testimony and therefore affirm.
The trial court ordered all partiesthe mother, the child and the appellantto submit to blood tests pursuant to sec. 767.48(1), Stats., and designated Dr. Jordan Frank to administer the tests. Dr. Frank performed red cell tests and sent the test results and the blood samples to David Lorentzen at the American Red Cross Badger Regional Blood Services laboratory in Madison. Lorentzen supervised the testing of the white cells for H.L.A. (Human Leukocyte Antigen) typing, and laboratory personnel at Badger fed the red cell and H.L.A. test results into a computer. Using a program developed by the University of Wisconsin, the computer calculated a *401 cumulative paternity index showing the odds in favor of L.F.E.'s paternity at 194 to 1, or 99.49 percent. At trial, over appellant's objection, Frank and Lorentzen testified as to the likelihood of L.F.E.'s paternity, using the computer-generated data to support their opinions.
Upon review of evidentiary issues, the question is not whether we would have allowed the evidence, but only whether the trial court exercised its discretion in accordance with accepted legal standards and the facts of record. State v. Pharr, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We will not find an abuse of discretion if there is some reasonable basis for the trial court's determination. State v. Hutnik, 39 Wis. 2d 754, 764, 159 N.W.2d 733, 738 (1968).
Appellant argues that there was inadequate foundation for admission of Frank's and Lorentzen's testimony concerning the computer calculations. He concedes that both are experts in their own fieldsFrank in red cell testing and Lorentzen in H.L.A. testing. He argues, however, that because neither are qualified experts in computer science or statistics, the trial court erred in permitting them to incorporate the computer-generated data into their opinions.
We note first that challenges to the admissibility of source materials underlying an expert's opinion go not to the qualifications or competency of the witness, but only to the weight to be accorded his or her testimony. E. D. Wesley Co. v. City of New Berlin, 62 Wis. 2d 668, 675, 215 N.W.2d 657, 661 (1974). The weight of the evidence is a matter solely for the factfinder, and it is not the function of an appellate court to review such questions. Bode v. Buchman, 68 Wis. 2d 276, 289, 228 N.W.2d 718, 726 (1975). If appellant believed that there was an inadequate foundation for any witness's opinion, it was his duty to explore the defect on cross-examination. *402 Rabata v. Dohner, 45 Wis. 2d 111, 135, 172 N.W.2d 409, 421 (1969). He had ample opportunity to do so, for he obtained copies of the test results several months prior to trial.
[1]
Even so, it is well settled that an expert witness may rely on reports and information provided by others. Vinicky v. Midland Mut. Casualty Ins. Co., 35 Wis. 2d 246, 254, 151 N.W.2d 77, 82 (1967). In Vinicky, the defendant objected (on hearsay grounds) to a doctor's reliance on another physician's medical reports, and the court held that "it is proper for a physician to make a diagnosis based in part upon medical evidence of which he has no personal knowledge but which he gleaned from the reports of others." Id. at 254, 151 N.W.2d at 82. Similarly, in Chapnitsky v. McClone, 20 Wis. 2d 453, 122 N.W.2d 400 (1963), a doctor was allowed to express an opinion based on unauthenticated x-rays and medical records. The court commented in both cases that "[u]nderlying this decision is the concept [that] the hospital records, although hearsay, were trustworthy as a basis for a medical conclusion because one in a position to know accepted and relied upon them in the important daily affairs of mankind." Vinicky, 35 Wis. 2d at 254, 151 N.W.2d at 82, Chapnitsky, 20 Wis. 2d at 461, 122 N.W.2d at 404, quoting Rupp v. Travelers Indemnity Co., 17 Wis. 2d 16, 20, 115 N.W.2d 612, 615 (1962). Finally, in State v. Cadden, 56 Wis. 2d 320, 326, 201 N.W.2d 773, 775 (1972), the court stated:
We have previously held that, since in their daily practice physicians normally rely on the facts and opinions of other experts, courtroom testimony, when based on the medical observations and findings of others, is sufficiently reliable to permit medical conclusions. This exception to the hearsay rule comports with accepted standards of medical practice.
*403 The exception is codified in sec. 907.03, Stats., which provides that:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
Dr. Frank testified that reliance on laboratories to perform blood testing is an accepted practice in the medical community and that many physicians and scientists routinely accept and use data from the Badger laboratory. He also stated that only three facilities in Wisconsin do H.L.A. typing and that it is not only routine for hospitals to use such reference labs, it is necessary.
[2]
Appellant argues, however, that for the court to allow any testimony concerning computer data, the reliability of both the computer and its program must be established, and that absent such foundation, neither Frank nor Lorentzen should be permitted to rely on the computer data as evidence of paternity. For authority, appellant cites United States v. Russo, 480 F2d 1228 (6th Cir. 1973), cert. denied, 414 U.S. 1157 (1974), a case in which computerized business records were admitted into evidence after a lengthy record was made establishing their reliability. He also refers us to 7 ALR 4th 8 (1981), "Admissibility of Computerized Private Business Records," in which the editor suggests that before computer printouts are received in evidence, there should be proof by a qualified record custodian of the reliability of the hardware and the program, as well as the manner in which the data was entered and stored. The attempted *404 analogy between computerized business records and the test results in this case is misleading, however. Neither Russo nor the cases discussed in the annotation addressed the question of materials used by experts in forming opinions. Moreover, there is a distinction between the admission of computerized business records and computer-collated statistical information. In this case, personnel in Lorentzen's laboratory fed test results from conceded experts (Frank and Lorentzen) into a computer, and the computer calculated a statistical paternity index. The computer report was merely a net result of composite information fed into the machine. The medical experts interpreted this report and relied on it, as they routinely do, as a partial basis for their opinions. The trial court did not abuse its discretion in admitting the evidence.
By the Court.Judgment and order affirmed.
NOTES
[] Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.