COURT OF APPEALS
DECISION
DATED AND FILED

February 5, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP461**

STATE OF WISCONSIN

Cir. Ct. No. 2025SC905

IN COURT OF APPEALS
DISTRICT IV

---

MADISON DEVELOPMENT CORPORATION,

   PLAINTIFF-RESPONDENT,

V.

CONNIE SHAW,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Reversed and cause remanded for further proceedings.*

¶1     BLANCHARD, J.[1]  Connie Shaw appeals a judgment evicting her from a residential apartment unit owned by the Madison Development Corporation

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

("the landlord"). Approximately 90 days before Shaw's lease on the unit expired, the landlord gave her a notice to vacate, indicating that her lease would not be renewed. To explain the nonrenewal decision, the landlord's notice made allegations about Shaw's conduct that were cast as negative behavior, although the landlord did not claim that she failed to pay all rent due at pertinent times. Shaw remained in the unit for some time after the lease expired.

¶2 In a small claims proceeding, Shaw argued in part that the landlord's decision to not renew her lease violated WIS. STAT. § 704.45(1). This statutory provision prohibits a landlord from taking actions against a tenant, including nonrenewal of a lease, when the landlord's action is done in retaliation for a tenant taking any of the three forms of conduct specified in § 704.45(1)(a)-(c) (making a good faith complaint to authorities about a premises defect; complaining to the landlord about needed repairs or code violations; or otherwise exercising a legal right relating to residential tenancies).

¶3 The record reflects that the circuit court completely failed to apply WIS. STAT. § 704.45 at trial, even though Shaw raised this as a defense. Instead, the court limited the scope of its ruling to a determination that, based on the evidence offered by the parties, the grounds that the landlord gave Shaw for nonrenewal in its notice were reasonable, and that these reasons individually and collectively provided a valid basis for evicting Shaw after the term of the lease expired. Shaw argues that if the court had properly considered her retaliation defense the court would have concluded that the eviction was defective because the landlord's nonrenewal decision was the product of unlawful retaliation against Shaw for exercising tenancy-related rights protected by statute.

¶4      Relying on the factual findings that the circuit court made at the small claims trial, I conclude that Shaw has shown on appeal that WIS. STAT. § 704.45(1) may protect her from retaliation for some, but not all, of Shaw's actions as described in the landlord's 90-day notice to vacate the unit. Under these circumstances, the court needs to determine whether further evidence should be adduced and whether it would be appropriate for the court to make additional findings relevant to determining if Shaw's conduct is subject to protection under § 704.45(1)(c). If the court determines that any of Shaw's conduct could be protected in the event that causation is shown, then the court should address the causation issue, namely, whether the landlord's decision not to renew Shaw's lease would not have occurred but for the landlord retaliating against Shaw's protected conduct. *See* § 704.45(1)(intro.). Accordingly, I reverse and remand to the court for further proceedings.

## BACKGROUND

¶5      Shaw moved into the Madison apartment unit at issue in 2018, but what is pertinent here is her relationship with the landlord that was created by the lease that she entered into in November 2023. That lease contained a rental term of 12 months (Feb. 1, 2024, through Jan. 31, 2025). The lease further stated that it was not subject to automatic renewal. Instead, Shaw and the landlord were required to "agree in writing if the tenancy is to continue beyond the last day of the rental term."

¶6      The landlord sent Shaw, by certified mail, a document entitled "90 Day Notice to Vacate," which was dated October 31, 2024. The notice stated that Shaw's lease was set to expire the following January 31. There is no dispute that this notice conveyed to Shaw the idea that the landlord intended not to renew the

lease even if Shaw wanted to do so. The notice gave three reasons for the landlord's nonrenewal decision, all involving alleged conduct by Shaw:

> • Threatening language in email towards [the landlord's] staff. (See attached for details.)
>
> • Multiple baseless reports were made against [the landlord's] staff including an unwarranted restraining order. (See attached for details.)
>
> • Your conduct has resulted in [the landlord's] property insurance carrier creating a general liability exclusion for the property in which you reside, stating that the exclusion was specifically due to your conduct. [The landlord's] management was forced to seek coverage through several insurance markets with a wholesale insurance broker. At least ten insurance carriers were approached, and only one quote was able to be obtained. Several of the markets that declined to offer coverage said that once you were no longer a tenant, they would be willing to requote a general liability policy for your building. This poses an increased hardship and financial burden on the property.

Attached to the notice was email correspondence purporting to support aspects of these three allegations.

¶7     Shaw did not vacate the unit by January 31, 2025, and the landlord commenced an eviction action in small claims court on February 3, 2025.

¶8     Shaw filed an answer and counterclaim. Shaw asserted, in pertinent part, that the landlord's pursuit of an eviction action was in retaliation against Shaw for her actions in "defending her warranties of habitability and peaceful enjoyment guaranteed by her lease of [the unit] in violation of WIS. STAT. § 704.45 and [WIS. ADMIN. CODE §] ATCP 134.09(5)."[2]

---

[2] My conclusions in this opinion are not based on the interpretation or application of WIS. ADMIN. CODE § ATCP 134.09(5) (Aug. 2015). For context, that code provision prohibits landlords from "terminat[ing] a tenancy," giving notice to prevent "the automatic renewal of a
(continued)

¶9 At a small claims trial at which both sides were represented by attorneys, the circuit court heard evidence that included testimony by Shaw and a manager employed by the landlord. As discussed in more detail below, much of the witnesses' testimony focused on the contents of the landlord's nonrenewal notice and on Shaw's alleged conduct that the notice identified as the basis for the nonrenewal decision. This included testimony regarding whether Shaw had had the right as a tenant to take the following actions, which she had in fact taken: (1) filing a discrimination complaint with the City of Madison against the landlord and (2) filing a petition for a harassment injunction in the circuit court against a maintenance worker employed by the landlord.

¶10 In introducing its decision on the merits, the circuit court said that it considered its "sole purpose" in the case to be "to look at the 90 Day Notice to Vacate and see if it is sufficient to proceed with this eviction." The court discussed each of the three grounds for nonrenewal stated in the landlord's notice. In addressing the landlord's three reasons for nonrenewal stated in the notice, the court operated from the factual premise that the notice credibly described the landlord's actual reasons for not renewing the lease—as opposed to some pretextual reason or reasons. The court stated that the notice was "brought from the perspective of [the landlord] and what is in [its] best interest." The court determined that each of the three grounds stated in the notice had been established

---

lease, or constructively evict[ing] a tenant by any means … in retaliation against a tenant because the tenant has: … [a]sserted, or attempted to assert any right specifically accorded to tenants under state or local law." But neither party in this appeal bases an argument on the content of this regulation until Shaw does for the first time in her reply brief. In general, this court need not consider arguments made for the first time on reply. *See Van Oudenhoven v. DOJ*, 2024 WI App 38, ¶34, 413 Wis. 2d 15, 10 N.W.3d 402. Further, at most, Shaw's reliance on § ATCP 134.09(5) could support points that I already resolve in her favor for other reasons explained in this opinion.

as a matter of fact, and granted a judgment of eviction on that basis. At no point during its analysis did the court appear to apply any pertinent aspect of WIS. STAT. § 704.45 to the trial evidence.[3]

¶11    Shaw appeals.

## DISCUSSION

¶12    I begin by clarifying that there appears to be no dispute on appeal that, as the circuit court appeared to determine, the allegations that the landlord made in the notice constituted the reasons that the landlord actually relied on to make the nonrenewal decision. That is, Shaw has not argued in the circuit court or now on appeal that the landlord's stated reasons for nonrenewal were merely pretextual, or that it had any reasons for nonrenewal other than those stated in the notice.[4]

---

[3] Shaw's counsel did not challenge the circuit court's framing of the issues as defective on the ground that the court failed to reference Shaw's defense based on the prohibition against retaliatory conduct in WIS. STAT. § 704.45. But the court framed the issues as it did for the first time only after the court explicitly began to render its decision, so that in order for Shaw's counsel to make the point counsel would have had to interrupt the court in rendering its decision. The court did not provide the parties with an opportunity to make any statements either immediately before or immediately after the court rendered its decision. The landlord does not argue that Shaw failed to raise the retaliation defense to the court with sufficient clarity to be preserved for appeal and I conclude that the defense was preserved as an issue.

[4] I ignore federal housing regulations in this opinion. Explaining further, in Shaw's initial brief on appeal, she makes repeated references to federal regulations to the effect that terminating the tenancy of a "Section 8" housing voucher recipient requires a "serious violation of the lease." *See* 24 C.F.R. § 982.552(b)(2). The landlord argues in response that such regulations are inapplicable here because the landlord provided timely notice that it was terminating Shaw's lease before the expiration of the then-current lease term. Shaw does not address the landlord's argument in her reply brief, conceding the point. *See **United Coop. v. Frontier FS Coop.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's lack of response in reply to a respondent's argument that was not already addressed by appellant may be taken as a concession).

(continued)

¶13    With this framing point in mind, Shaw argues that the three reasons that the landlord gave for nonrenewal each involved Shaw asserting rights related to her tenancy, rendering the landlord's decision not to renew a violation of WIS. STAT. § 704.45(1). The landlord argues that no evidence was presented to the circuit court to support the application of § 704.45(1).

¶14    After providing pertinent legal standards below, I discuss in turn the application of WIS. STAT. § 704.45(1) to each of the landlord's three stated reasons for nonrenewal, concluding that the statute could protect some but not all of Shaw's alleged conduct, based on findings made by the circuit court.

¶15    But first I clarify the procedural posture of the case. Given the circuit court's failure to consider WIS. STAT. § 704.45(1), I am not able to determine whether the court would have made additional findings or conducted further inquiry relevant to the retaliation defense if the court had addressed the issue. For these reasons, it is necessary to remand to the circuit court for it to determine whether the landlord's decision not to renew the lease was in fact caused by retaliation for Shaw's conduct that is statutorily protected. I discuss the specific topic of causation in the discussion below, in addition to other considerations for the parties and the court on remand.

---

Separately, Shaw represents in her initial brief on appeal that, after the circuit court granted the judgment of eviction, Shaw moved out of the unit, which the landlord then rented to different tenants. As relief, Shaw asks this court to vacate the judgment of eviction and remand to the circuit court for a determination of "[p]roper compensation for a wrongful eviction" in a "follow up proceeding." The landlord does not argue that, if Shaw's merits arguments are successful, her request for relief is nonetheless improper, for example because it is moot. On appeal, the landlord asks only that this court affirm the eviction judgment.

¶16 This court interprets and applies WIS. STAT. § 704.45 de novo. *See State v. Blackman*, 2017 WI 77, ¶26, 377 Wis. 2d 339, 898 N.W.2d 774. I uphold the circuit court's findings of fact unless they are clearly erroneous. *See Reusch v. Roob*, 2000 WI App 76, ¶8, 234 Wis. 2d 270, 610 N.W.2d 168. "Under this standard, even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." *Id.*

¶17 WISCONSIN STAT. § 704.45(1) prohibits landlords who have entered into residential leases from taking specified actions involving tenants, if it is proven by a preponderance of the evidence that the landlord's action would not have occurred "but for" the landlord retaliating against a tenant, and if it is also proven that the retaliation was specifically in response to the tenant engaging in one or more of the three forms of conduct described in paragraphs (1)(a) through (c).[5]

---

[5] As pertinent here, WIS. STAT. § 704.45(1) states:

> [A] landlord in a residential tenancy may not … bring an action for possession of the premises, [or] refuse to renew a lease or threaten [to take these actions], if there is a preponderance of evidence that the action or inaction would not occur but for the landlord's retaliation against the tenant for doing any of the following:
>
> **(a)** Making a good faith complaint about a defect in the premises to an elected public official or a local housing code enforcement agency.
>
> **(b)** Complaining to the landlord about a violation of [WIS. STAT. §] 704.07 [("Repairs; untenantability")] or a local housing code applicable to the premises.
>
> **(c)** Exercising a legal right relating to residential tenancies.

(continued)

8

¶18 The result is that, as with the common law retaliation defense that predated it, WIS. STAT. § 704.45(1) does not require that a landlord have a "good" reason to nonrenew a lease, only that the landlord not rely, to a sufficient degree, on a "bad" reason. *See **Dickhut v. Norton***, 45 Wis. 2d 389, 399, 173 N.W.2d 297 (1970) (landlord "may terminate a tenancy at will … for any legitimate reason or no reason at all," but "cannot terminate such tenancy" in retaliation for the tenant "report[ing] an actual housing code violation"). For this reason, while the parties here dispute whether Shaw's conduct alleged in the landlord's nonrenewal notice constituted one or more breaches of the lease, this dispute matters to resolving this appeal only to the degree that the alleged lease violations consisted of conduct that is protectable under § 704.45(1)(a)-(c).

¶19 There is no dispute that Shaw's lease with the landlord is a residential lease. The potentially prohibited landlord actions that are pertinent here are "bring[ing] an action for possession of the premises" and "refus[ing] to renew a lease." *See* WIS. STAT. § 704.45(1). I do not discern the landlord to dispute that it took those actions here or that § 704.45(1) prohibits those actions if the other requirements of the statutory provision are met.

¶20 The preponderance of the evidence standard is a burden of proof requiring a litigant "to demonstrate by the greater weight of credible evidence the

---

I observe that the protections provided by the statute are subject to exceptions not pertinent here. Explaining briefly, under WIS. STAT. § 704.45(2), it is not prohibited retaliation for a landlord to "bring an action for possession of the premises if the tenant has not paid rent," unless the unpaid rent is the result of a retaliatory increase in rent as prohibited by § 704.45(1). Further, § 704.45 does not apply to "complaints" that a tenant "made about defects in the premises caused by the negligence or improper use of the tenant who is affected by the action or inaction." § 704.45(3). There is no allegation that Shaw failed to pay rent that she owed at any pertinent time or that she caused defects in the premises when she lived there.

certainty of his or her claim." *See Town of Schoepke v. Rustick*, 2006 WI App 222, ¶11, 296 Wis. 2d 471, 723 N.W.2d 770.

## I. Threatening Language

¶21 At trial, the landlord's manager testified in part that the "threatening language" at issue was a statement that Shaw made in a February 8, 2024 email that she sent to six recipients, one of whom was the manager. Specifically, the landlord noted that she wrote that if a particular maintenance worker employed by the landlord "tries to harass me or intimidate me again, he will regret it." More fully, Shaw's February 8th email stated:

> I'm sick and tired of being threatened by his actions. He has cussed me out for NO reason. He has given me the finger for NO reason. He has screamed at me in the [parking] lot for NO reason, and I have had other run-ins with him. He behaves like a child, and you do nothing about it.
>
> I've asked [the landlord's manager] to let me know who to complain to about [the maintenance worker] and his bullshit, but he has never gotten back to me on that. I also need to know where my previous complaints ended up, since [a former employee of the landlord] no longer works here and he said nothing about it.
>
> I need to know who is keeping track of [the maintenance worker's] behavior and his actions towards me. I would also ask about when something will be done about it, but [the landlord] seems hell bent on letting him get away with it.
>
> ….
>
> If [the maintenance worker] tries to harass me or intimidate me again, he will regret it. YOU NEED TO DO SOMETHING ABOUT HIM. I'm done dealing with his childish nonsense. He will have to answer for his actions in a courtroom, hopefully soon.

¶22 The manager further testified that he was not aware that Shaw ever made a statement to or about the maintenance worker that was explicitly a "physical threat," unless her stating "he will regret it" in the email could be interpreted to be a physical threat. Shaw testified that, after sending this email, she petitioned for a restraining order against the maintenance worker in circuit court, but that the petition was denied.

¶23 The circuit court determined that "[s]omeone could conceive or believe" that the phrase "he will regret it" was threatening language "against another person." The court further found that the landlord did in fact "take[] [Shaw's email] as a threat to their employee.

¶24 Shaw argues that the circuit court did not have a reasonable basis to conclude that the "he will regret it" statement, considered in proper context, conveyed an improper warning or ultimatum, and therefore it could not have been a reasonable basis for nonrenewal. Shaw relies in part on other language in the same email, in which she refers to Shaw seeking legal recourse against the maintenance worker, as she later attempted to do by seeking an injunction against him.

¶25 In a closely related argument, this time focused on her retaliation defense, Shaw contends that her email, as with all of the conduct cited by the landlord for its nonrenewal decision, was a proper exercise of a legal right related to her tenancy.

¶26 I conclude that Shaw's related arguments on this issue both fail because the circuit court made findings of fact, which Shaw does not show are clearly erroneous, to the effect that the landlord reasonably believed Shaw was

threatening to take improper action against its maintenance worker that were not related to the exercise of any legal right.[6]

¶27     Explaining this conclusion further, Shaw's arguments are all premised on the proposition that her February 8th email, including the "he will regret it" language, constituted the exercise of a legal right, protected under WIS. STAT. § 704.45(1)(c).   However, she fails to show that the circuit court was obligated to find that the email constituted a mere warning that she was considering taking a proper, legal action.  Implied in the court's discussion of this topic was a finding that recipients of the email, including the landlord's employees, did not interpret Shaw's use of the phrase "he will regret it" as a mere warning that she was considering taking legal action.  That is, the court essentially found that recipients interpreted Shaw as threatening to take other action against the maintenance worker that was potentially harmful and improper. *See **State v. Echols**, 175 Wis. 2d 653, 672-73, 499 N.W.2d 631 (1993) (under proper circumstances, this court assumes that a circuit court's legal conclusion was supported by implied factual findings).   Further, although the court did not explicitly address aspects of the email other than use of the phrase "he will regret it," the court's approach to the email is supported by the fact Shaw used what

---

[6] Only subpart (1)(c) of WIS. STAT. § 704.45(1) is potentially at issue.  I do not understand Shaw to argue that any of her conduct cited by the landlord is protectable from retaliation under WIS. STAT. § 704.45(1)(a) or (1)(b).  Regarding § 704.45(1)(a), there are no facts suggesting that Shaw's alleged conduct regarding the maintenance person was intended to identify defects in the premises directed to an "elected public official or a local housing code enforcement agency." *See also* WIS. STAT. § 704.01(intro.), (3) (defining "premises" for purposes of WIS. STAT. ch. 704 to mean the property covered by the lease," including "the realty," fixtures, and "personal property furnished with the realty" "unless context indicates otherwise").  Regarding § 704.45(1)(b), Shaw does not develop an argument connecting her conduct to a potential violation of the WIS. STAT. § 704.07, addressing "untenantability," or local housing code provisions.

could be reasonably interpreted as a tone that was hostile in excess of what would be needed to communicate an intent to take proper recourse. For example, Shaw at times used all capital letters and stated that she was "done dealing with [the maintenance worker's] childish nonsense." "[D]one dealing with" could imply a threat to escalate to physical or otherwise harsh methods that go beyond merely lodging complaints with the landlord or taking legal action.

¶28 For these same reasons, I agree with the circuit court that Shaw sending the February 8 email also breached the lease, which could be relevant to the extent that breaches of lease inform consideration of Shaw's claim that the landlord's reasons for nonrenewal violate the statutory prohibition on retaliation. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶21, 326 Wis. 2d 300, 786 N.W.2d 15 (lease terms are interpreted and applied in the same manner as other contracts, presenting issues of law that appellate courts resolve de novo). The lease prohibited Shaw from, in pertinent part, "engag[ing] in activities which unduly disturb, threaten, or harass … [the landlord's] Staff," which the lease defines to "include[] swearing, yelling, taunting, following, threatening, and other forms of verbal, written, or physical abuse." Given the overall content of the email, I conclude that it was, in the words of the lease, "unduly … threaten[ing]," which is a finding that Shaw does not show is clearly erroneous.

¶29 As part of Shaw's argument that her email was not improperly threatening, Shaw asserts that the circuit court should have applied the First Amendment test for determining when language constitutes a "true threat," which is the test used to determine when allegedly threatening language can be constitutionally prosecuted under a criminal statute. *See State v. Perkins*, 2001 WI 46, ¶17, 243 Wis. 2d 141, 626 N.W.2d 762 ("The phrase 'true threat' is a term of art used by courts to refer to threatening language that is not protected by the

First Amendment."), *abrogated on other grounds recognized by **Kindschy v. Aish***, 2024 WI 27, 412 Wis. 2d 319, 8 N.W.3d 1. But the "true threat" concept does not provide any solving power here for at least the reason that the issue is whether Shaw's use of "he will regret it" and other possibly threatening aspects of the email constitute the exercise of a right related to her tenancy under WIS. STAT. § 704.45(1)(c). Assuming without deciding that Shaw's use of the phrase could not reasonably be characterized as a "true threat" if Shaw had been charged with a crime for making it, Shaw nonetheless fails to show that using the language that she did was tied to a legal right related to her tenancy. Put differently, as noted above, § 704.45(1) does not require that the landlord had a "good" reason not to renew Shaw's lease, only that the landlord did not rely to a sufficient degree on a "bad" reason. *See **Dickhut***, 45 Wis. 2d at 399.

¶30 On a related point, it does not avail Shaw to emphasize that the content of her email as a whole can reasonably support the inference that what she meant by "he will regret it" was only that she would pursue remedies against the maintenance worker in court, as she proceeded to do. This inference may have been available to the circuit court and, if found by the court, would have allowed the court to reach different findings than it did. But Shaw does not show that the court clearly erred in finding that the landlord subjectively viewed the email as including language threatening something other than merely availing herself of legal recourse against the landlord and its employee. Her email not only included the hostile sentence that the employee would "regret it," but as noted above had other at least arguably hostile features giving rise to interpretations that the email as a whole contained an improper threat or threats. Further, the court's findings were consistent with the testimony of the landlord's manager.

¶31 In sum on this issue, given the record on appeal, Shaw does not establish by a preponderance of the evidence that the email, which the circuit court found was considered improperly threatening by the landlord, constituted protectable conduct under WIS. STAT. § 704.45(1)(c). It follows, then, that the landlord's reliance on Shaw using "threatening language" could not on its own support a retaliation defense against the nonrenewal decision, unless the court were to make additional findings on remand when applying § 704.45 that could alter the application of the statute to this issue.

## II. "Baseless Reports"

¶32 Shaw argues that her "baseless reports," according to the notice of nonrenewal, all constituted exercises of legal rights related to her tenancy, with the result that, under WIS. STAT. § 704.45(1)(c), the reports cannot provide a basis for nonrenewal. As part of this argument, she contends that it would be "an absurd standard" for applying § 704.45(1)(c), and would "eviscerate[] tenants' rights," if the protection does not apply for the reason that she did not prevail in seeking relief through formal process. The landlord does not argue that, by their nature, Shaw's reports were not exercises of legal rights related to a residential tenancy. Instead, its argument is based entirely on the alleged "baseless[ness]" of Shaw's reports. Based on the admittedly limited set of potentially relevant facts that the circuit court found at the trial, I conclude that there is a preponderance of evidence showing that the reports identified in the landlord's notice constituted exercises of legal rights related to residential tenancies. Significantly, the court's findings included that the court did "not question[]" that Shaw "made her allegations in good faith," referring broadly to all of Shaw's alleged communications cited by the landlord in the notice.

15

¶33 In the following additional background, I identify each of Shaw's "reports" that I understand the landlord meant to refer to as "baseless." As noted above, the notice stated that the second reason for the nonrenewal was that Shaw had allegedly made "multiple baseless reports against [the landlord's] staff," which included her seeking what the landlord characterized as an "unwarranted" restraining order against the maintenance worker. In some of the emails attached to the notice, Shaw alleged to the landlord's manager that the maintenance worker had done things that included the following: driving dangerously close to Shaw's car in his truck, swearing at her, screaming at her, and giving her "the finger." In responsive emails, the manager stated that he was unable to verify her allegations based on security camera footage available to the landlord.

¶34 Shaw testified in pertinent part that, after the manager shared with her security footage of the incident involving the truck driving too close to her, she realized that this had not been the maintenance worker's truck. Nevertheless, Shaw maintained, the maintenance worker had been harassing her, including by "giv[ing] her the finger," spitting on her car, and pretending to call the police on her.

¶35 On the insurance issue, the landlord's manager testified that the landlord's insurance provider decided to exclude coverage for the apartment building at issue because of Shaw's complaints about the landlord's staff. The landlord introduced an email written by the landlord's "account manager for insurance" summarizing the landlord's difficulty in obtaining insurance, allegedly

based on the increased costs allegedly generated by Shaw's complaints.[7]  As pertinent to the "baseless reports" issue, the account manager's email described the following claims that Shaw made against the landlord or its staff, including reports regarding the maintenance worker:

- Shaw filed a discrimination claim with the City of Madison in 2019, which resulted in no indemnity being paid.  The account manager described Shaw's discrimination claim as being "baseless," although the account manager failed to provide any detail about this claim and I discern no details otherwise in the record.

- Shaw allegedly threatened to sue the landlord for "slander" and "breach of warranty" and for an alleged violation of her right as a tenant to peaceful enjoyment of the leased property.  According to account manager this claim was "closed" without any expense paid by the insurer.

- Shaw petitioned for a harassment injunction against the maintenance worker in February 2024, as noted above, and the petition was not granted by the circuit court.

¶36    With this as background, Shaw argues that each of her reports constituted the exercise of a tenancy-related right.  I take these in turn and explain

---

[7] Shaw argues that the content of this email regarding insurance coverage is two levels of hearsay, but she acknowledges that admission of written hearsay is permitted in small claims trial under WIS. STAT. § 799.209(2).  Moreover, Shaw forfeited any objection or argument that she might have made under small claims procedure by failing to raise any objection to this email in the circuit court.

why I agree with Shaw that she provided a basis for these positions, at least given the record developed in this case to date.

¶37    Regarding her reports to the landlord about the maintenance worker and the injunction action, Shaw contends that each of these actions was an exercise of her right to "quiet enjoyment" of the leased unit. Putting to the side whatever the potential merits may have been of Shaw's particular reports and her petition, there is extensive authority to support her general position that a tenant's allegations about relevant conduct of a landlord's employees can be made pursuant to the right to quiet enjoyment of leased property. *See* WIS. STAT. § 704.05(2) (granting tenant right to exclusive possession of the premises subject to limited exceptions); *Kersten v. H.C. Prange Co.*, 186 Wis. 2d 49, 57-58, 520 N.W.2d 99 (Ct. App. 1994) ("any disturbance of the tenant's possession by the landlord, or someone acting under [the landlord's] authority, which renders the premises unfit for occupancy for the purposes for which they were demised or which deprives the tenant of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a constructive eviction"); *Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 323, 417 N.W.2d 914 (Ct. App. 1987) ("A tenant may recover damages from the landlord for breach of an implied covenant of quiet enjoyment."). Further, there is no dispute that Shaw, as a tenant, had the right to report allegations of discrimination. *See* WIS. STAT. § 66.1011(1m)(e), (2) (authorizing political subdivisions, including cities, to "enact ordinances prohibiting discrimination in housing within their respective boundaries" that is similar to WIS. STAT. § 106.50); MADISON, WIS., GEN. ORD. § 39.03(1), (4), (10) (2025) (describing policies and procedures for City of Madison regarding housing-based and other forms of discrimination complaints); *see also* WIS. STAT.

18

§ 106.50(2)(f) (in part prohibiting discrimination by "engaging in harassment of a tenant").

¶38 After Shaw argues that her reports, including seeking formal recourse from the city and circuit court, were exercises of tenancy-related rights, the landlord exclusively responds that the reports were baseless, an argument that I address below. The landlord does not otherwise attempt to engage with the substance of Shaw's position that the kinds of reporting that she made constituted exercises of tenancy-related rights. Thus, the landlord concedes this point. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578. Further, the landlord does not dispute the general point that a tenant's good faith allegations of inappropriate conduct by a landlord's employee, occurring in and around the building containing the leased premises, can implicate the tenant's right to quiet enjoyment of the leased premises. Nor does the landlord base any argument on the fact that Shaw chose to first report some of her allegations to the landlord directly, before seeking a harassment injunction in court, instead of starting with a court proceeding to seek goals that she believed to be consistent with her legal rights.

¶39 I now address the landlord's argument about the allegedly baseless nature of Shaw's reports.

¶40 The landlord argues that this court should defer to what the landlord characterizes as a finding of fact by the circuit court that some of Shaw's reports could be, in the words of the court, "look[ed] at … from an objective standpoint" as "baseless." But this paints with too broad a brush. I interpret the court to have made findings about only one of the reports addressed by the landlord's nonrenewal notice. Regarding Shaw's reports to the landlord directly, the court

directly characterized as "baseless" only one of Shaw's claims—the incident involving the truck driving too closely, which Shaw admitted she had inaccurately identified as involving the maintenance worker. In making that statement, the court appeared to rely on Shaw's concession at trial that this particular claim lacked a factual basis. The court did not address Shaw's testimony regarding the maintenance worker's other alleged behavior toward her, nor did the court address the landlord's manager's emails to the effect that he did not find evidence that would have corroborated Shaw's other allegations in security footage that was available to the landlord's manager. The court also noted that Shaw's discrimination complaint with the city and her petition for an injunction against the maintenance worker both resulted in unsuccessful outcomes for her. But no meaningful evidence was presented regarding the merits of the complaint or the petition or why the outcomes were unsuccessful. Shaw testified that she "lost the [injunction] hearing" because she "attempted it without an attorney." And as noted, the court made the general comment that the court did "not question" that Shaw "made her allegations in good faith." Under these circumstances, the court's statement regarding how the landlord could view as "baseless" some of Shaw's claims from an "objective point of view" does not state, or even imply, a finding of fact relevant to whether any or all of Shaw's reports fit within the possible protection of WIS. STAT. § 704.45(1)(c).

¶41    In a related argument, the landlord apparently means to contend that, in order to trigger protection under WIS. STAT. § 704.45(1)(c), Shaw had to show by a preponderance of the evidence that her claims were not "baseless." The first problem with this argument is that the landlord does not explain what it means by "baseless." Intentionally pursued with knowledge of its complete inadequacy? Supported by no evidence at all? Supported by only scant evidence? Beyond that

20

point, the landlord fails to support the general proposition that § 704.45(1)(c) requires a tenant to prove that an exercise of legal rights involved a claim with any particular level of merit, such as that the tenant was likely to or sure to prevail with a court or other pertinent public official. Indeed, the statute contains no language that could support this counterintuitive proposition.[8]  In referring to the *exercise* of a legal, tenancy-related right, § 704.45(1)(c), does not specify a level of merit in terms of factual or legal basis for the exercise. Apt dictionary definitions of "exercise" support the point. *See exercise*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To make use of" or "to put into action," giving the example of "exercis[ing] the right to vote"); *exercise*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/exercise (Jan. 29, 2026) ("the act of bringing into play or realizing in action"). The dispositive point is that Shaw offered evidence that she sought to, in the words of these definitions, "bring into play" and "put into action" rights that, as noted above, the landlord does dispute are tenancy related.

---

[8] The landlord notes that WIS. STAT. § 704.45(1)(a) protects tenants "[m]aking … good faith complaint[s] about … defect[s] in the premises" to elected public officials or local housing code enforcement agencies. However, as noted in the text, the circuit court did not find that Shaw acted in bad faith. Moreover, Shaw's reliance on § 704.45 focuses entirely on subpart (1)(c), and not on subpart (1)(a). *See supra* note 6.

The landlord argues a similar point based on a common law version of a tenant's retaliation defense established by our supreme court in ***Dickhut v. Norton***, 45 Wis. 2d 389, 173 N.W.2d 297 (1970), prior to the enactment of WIS. STAT. § 704.45. In ***Dickhut***, the supreme court stated that a landlord "cannot terminate [a] tenancy simply because [the] tenant has reported an *actual* housing code violation as a means of retaliation." *See **Dickhut***, 45 Wis. 2d at 399 (emphasis added). However, without going into all of the potentially pertinent details here, the legislature in § 704.45(1) expressly chose to expand this defense in some respects, which included protecting the exercise of legal rights by a tenant that are related to residential tenancies under subpart (1)(c).

¶42    To be sure, one can imagine a case in which the preponderance of the evidence shows that a tenant's claims were not made in good faith, or at least lacked a legal or factual basis when made.  In such cases, a finder of fact could reasonably determine that a landlord's decision, for example, to not renew a lease was due to the landlord responding to a tenant's effort to harass the landlord with frivolous claims, or due to some other cause unrelated to the tenant's purported exercises of rights.  *See* WIS. STAT. § 704.45(1)(intro.), (c).  But here the court found that the claims were made in good faith.[9]

¶43    The landlord emphasizes that the circuit court concluded that Shaw's reports constituted violations of her lease.  Specifically, the court concluded that the adverse effects of Shaw's reports on the cost or availability of insurance coverage for the landlord demonstrated that Shaw had violated the following provision of her lease:

> During the lease term, as a condition of Tenant's continuing right to use and occupy the Premises, Tenant agrees and promises, unless Landlord otherwise provides in writing, as follows:
>
> .…
>
> … To NOT use or keep in or about the Premises anything that would adversely affect coverage of the Premises or the building of which they are a part under a standard fire or extended insurance policy.

---

[9] At one point in the course of explaining its reasoning, the circuit court asserted without elaboration that, like Shaw's use of "threatening language," her making allegedly "baseless reports" constituted a violation of the lease's prohibition against "disturb[ing], threaten[ing], or harass[ing] … the landlord's staff."  However, the court did not explain this determination.  Further the statement appears to be in direct conflict with the court's finding that Shaw acted in good faith in all of her alleged conduct that the landlord placed at issue.  In short, in contrast to the court's discussion of the "threatening language" topic, I do not view the record as supporting implied findings by the court that Shaw's reports breached this lease term in some manner.

Interpreting and applying these terms independently, I conclude that they do not apply to Shaw's reports, because they were not things that could be used or kept in or about her unit. *See **Maryland Arms***, 326 Wis. 2d 300, ¶21. Taking at face value all of the landlord's allegations regarding Shaw's conduct, I discern no instance of her "us[ing] or keep[ing] in or about" her unit "anything" that adversely affected the landlord's pertinent insurance coverage. Accordingly, the circuit court's conclusion that Shaw's claims violated these lease terms was in error and adds no value to the application of WIS. STAT. § 704.45 here.

¶44 Summarizing on this issue, the landlord's own nonrenewal notice identifies conduct by Shaw that the landlord now fails to dispute, based on the current record, were exercises by Shaw of rights that related to her tenancy. Thus, to the extent the circuit court might find for Shaw on the causation issue—that is, that the landlord would not have made its nonrenewal decision "but for" Shaw exercising her rights—WIS. STAT. § 704.45 would prohibit the nonrenewal decision.

### III. Insurance Coverage

¶45 To recap, the landlord's nonrenewal notice stated that Shaw's claims resulted in increased insurance costs or lack of availability for the landlord for the building in which Shaw was renting. As noted above, the landlord presented evidence supporting the inference that there were three instances in which Shaw made reports that resulted in adverse insurance outcomes for the landlord. On this topic again, Shaw argues that each of these reports she made involved her exercise of a tenancy-related right. I understand Shaw to suggest that, therefore, any reliance that the landlord placed on adverse insurance outcomes for its nonrenewal decision would not have occurred but for Shaw exercising protectable rights.

23

¶46    For the most part, the landlord fails to develop an argument, not already rejected above, which is supported by the language of WIS. STAT. § 704.45(1) or other relevant law, showing that a landlord may base nonrenewal of a lease on a tenant's exercise of rights protected under § 704.45(1)(c) because the exercise of those rights results in negative insurance consequences to the landlord. On the insurance coverage topic, the landlord merely emphasizes evidence supporting the reasonable inference, which the circuit court drew at trial, that the landlord did in fact suffer adverse insurance consequences as a result of Shaw's reports.

¶47    The landlord might mean to implicitly suggest that the legislature could not have intended through WIS. STAT. § 704.45 to protect tenants from retaliation by landlords in situations in which tenants have created negative insurance consequences for landlords. However, the statutory language gives no hint in that direction. It is foreseeable that various types of claims or complaints by tenants (regardless of their merit) could affect coverage availability and policy rates. But those market forces do not dictate the statutory standards that protect tenants under certain circumstances from retaliation at the hands of landlords.

¶48    Summing up on this issue, at least given the record developed to date in this case, the landlord effectively concedes that Shaw's reports were by their nature protectable exercises of tenant-related rights. *See **United Coop.***, 304 Wis. 2d 750, ¶39.

### IV. Causation

¶49    I have explained why some of the reasons that, at least based on the current record and findings made by the circuit court so far in this case, the landlord gave for nonrenewal involve alleged actions by Shaw that are protectable

24

under Wɪs. Sᴛᴀᴛ. § 704.45(1), while other reasons given by the landlord do not. To repeat, given that the court did not apply § 704.45(1), the court may deem it appropriate to add or clarify additional findings that could affect application of sub. (1)(c) specifically. It will be for the court following remand to decide in its discretion, after receiving whatever input the court deems appropriate from the parties, whether any additional evidence offered by either side should be considered by the court. In any event, if the court were to determine that at least some of Shaw's conduct giving rise to the landlord's nonrenewal decision was protectable, this would raise the issue of whether the landlord's decision would not have occurred "but for" Shaw's protectable conduct, or, instead that the landlord would have made the same decision based on Shaw's nonprotectable conduct alone.

¶50     Neither party on appeal develops a supported argument on the causation element. Shaw argues that all of the reasons cited in the landlord's notice constitute protectable conduct, which she submits could mean only that the landlord's nonrenewal decision was in response to, that is caused by, protected conduct. The landlord asserts that there was no evidence of retaliation, and therefore the specific causation issue need not be reached. And, as noted above, the circuit court did not explicitly address Wɪs. Sᴛᴀᴛ. § 704.45(1) in any respect.

¶51     Causation as an element in other legal contexts presents an issue of fact, and I see no reason to interpret Wɪs. Sᴛᴀᴛ. § 704.45 as requiring a different approach. *See, e.g.*, *Johnson v. Neuville*, 226 Wis. 2d 365, 378, 595 N.W.2d 100 (Ct. App. 1999) (stating in context of civil negligence trial that "[c]ausation is a question of fact"). "Because the [circuit] court has not made any findings of fact on the issue, remand is appropriate." *See U.S. Bank Nat'l Ass'n v. Klein*, 2024 WI App 7, ¶32, 410 Wis. 2d 598, 3 N.W.3d 726. To repeat, it remains for the

25

court in its discretion to determine if further fact finding is necessary to resolve the topic of causation. To assist the parties and the court, I note the following on this topic.

¶52 WISCONSIN STAT. § 704.45(1) unambiguously signals legislative intent to require a tenant to prove "but-for" causation, connecting a potentially prohibited landlord action and protected tenant activities. Across contexts, "but-for" causation is typically established when a factor is a "substantial cause" of the result at issue. *See* ***Chapnitsky v. McClone***, 20 Wis. 2d 453, 465-67, 122 N.W.2d 400 (1963) (upholding a "but-for" jury instruction in a negligence action because it was consistent with "[t]he substantial factor test of causation"); ***State v. Johnson***, 2005 WI App 201, ¶13, 287 Wis. 2d 381, 704 N.W.2d 625 (for purposes of criminal restitution statute, the defendant's criminal activity must be "'a substantial factor in causing' pecuniary injury to the victim in a 'but for' sense" (quoted source omitted)). This theory of causation does not require that a cause be a sole or even primary factor in causing the result in question. *See* ***Schnabl v. Ford Motor Co.***, 54 Wis. 2d 345, 353-54, 195 N.W.2d 602 (1972); *cf.* ***Dickhut***, 45 Wis. 2d at 399 (requiring in common law version of retaliation defense that landlord's "sole purpose" for seeking to terminate a tenancy was in response to reporting an actual code violation). Put differently, "but-for" causation asks only whether an event would have taken place absent a particular factor. ***Emer's Camper Corral, LLC v. Alderman***, 2020 WI 46, ¶21, 391 Wis. 2d 674, 943 N.W.2d 513.

¶53 The parties do not ask this court to address any issue regarding appropriate potential remedies on remand in the event that Shaw prevails on her retaliation defense, and if this point is reached the circuit court will resolve the issue after hearing arguments from the parties. As discussed above, to prevail

Shaw would need to show that WIS. STAT. § 704.45(1)(c) protects at least some of her conduct and, further, that the causation element is satisfied. Regarding the first requirement, if the circuit court makes new findings or clarifies existing findings that place all of Shaw's conduct referenced in the landlord's notice of nonrenewal outside the protection of § 704.45(1)(c), then her defense necessarily fails. Similarly, the defense also fails if the court finds that the landlord would have made the same non-renewal decision regardless of Shaw engaging in conduct that is protectable under § 704.45(1)(c). In contrast, if the court makes no new findings regarding the nature of Shaw's conduct related to the landlord's nonrenewal decision, then there would be no basis not to follow, as law of the case, this opinion's de novo application of § 704.45(1)(c) to the findings now in existence. What would be left would be the causation issue, which would require new findings even if the court determines in its discretion that other issues do not.

## CONCLUSION

¶54 For all of these reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.